THE TRAVELERS FIRE INSURANCE COMPANY *v.* ARNOLD.

4-8390                                    208 S. W. 2d 773

Opinion delivered March 1, 1948

*John M. Lofton, Jr.,* and *Owens, Ehrman & McHaney,* for appellant.

*J. H. Lookadoo* and *Agnes F. Ashby,* for appellee.

SMITH, J. Fire insurance policies were issued to appellee Arnold by appellant fire insurance companies covering a granary and a quantity of soy beans stored therein. The coverage for the building and the beans

was in separate amounts. A fire occurred which resulted in the total loss of both the building and its contents. Separate suits were brought against the insurance companies, which were consolidated and as the same defenses were interposed by all the insurance companies, the causes were tried as a single case and from the judgments against the companies is this appeal.

Inasmuch as the granary was totally consumed by the fire, a verdict for its insured value was returned in the plaintiff's favor under the instructions of the court, and of this action no complaint is made. The question litigated related to the quantity and value of the beans destroyed and plaintiff's right to have judgment for the full amount of the recovery. By the terms of the policies only plaintiff's interest in the beans was insured, and it was insisted that the plaintiff was not the sole owner of the beans and should have been allowed to recover only the value of his proportionate interest.

The beans, or most of them, appeared to have been grown on land owned by one W. B. Arnold, at the time of his death, although the granary was on land owned by plaintiff in severalty. Plaintiff was one of the heirs of W. B. Arnold, and there were four others, a brother and three sisters. The companies filed a motion that the other heirs be made parties to the suit, and in response to this motion the other heirs filed an intervention in which they alleged their respective interests in the land on which the beans had been grown, and they prayed that they have judgment for their proportionate part of any recovery on account of the beans. The right of the interveners was not submitted to the jury; and upon submission the intervention was dismissed, and no appeal has been prayed from that action.

The interveners were neither necessary nor proper parties to this litigation. No one of the policies insured any interest of the interveners and the only interest insured was that of the plaintiff.

It was competent of course, to show that plaintiff was not the sole owner of the beans, and that other parties had an interest therein, this for the purpose of de-

termining what appellee's interest in fact was, as he was entitled to recover the value only of his own interest and not the interest of his co-tenants. In Vol. 5, § 3661, p. 497, Appleman's Insurance Law and Practice, it is said: "Where, by the terms of the policy, the insurer is not to be liable beyond the interest of the insured in the property, a stranger to the contract cannot collect thereon simply because he was the owner of an undivided interest in the property destroyed."

The only testimony offered in support of the allegations of the intervention was the introduction of certain deeds showing the title of the interveners to certain interests in the land which plaintiff did not deny. But in his answer to the intervention he alleged that before planting the beans he had a contract with his co-tenants that he "would plant and cultivate the beans in order that AAA would let the farm have more land to plant in cotton, and that he was to have the soy beans." In support of this answer to the intervention plaintiff offered testimony which was not disputed to the following effect. The farm owned by him and his brother and three sisters was quite large and his brother wanted to plant his part in cotton, but they were required to plant 220 acres of land in soil building crops. He explained to his sisters that it would require six or eight thousand dollars to buy the equipment and seed for that crop, but they were not interested in putting out any money in planting that crop, and told him that if he wanted to plant the beans in order to comply with the AAA regulations thereby permitting a larger acreage to be planted in other crops, he might do that, and that if he did so "they were my soy beans." If this testimony is true, and it is not disputed, plaintiff was the sole owner of the beans, although he was not the sole owner of the land on which they grew.

The chief ground relied upon for the reversal of the judgment is that it was grossly excessive and is not sustained by the testimony. There are many contradictions in plaintiff's testimony and appellants urge that it is so contradictory as to be unworthy of belief, but we

cannot say that it is not legally sufficient to support the verdict.

The judgment on account of the beans was for the sum of $12,320, the full amount sued for. Before filing suit plaintiff presented a claim for a much larger quantity of beans than he sued for. He had built on his land a granary in which there were four bins each 16'x16' and 16' high. In his claim he had stated that there were five of these bins. He had been accumulating the beans in the granary over a period of several years and the testimony on the part of the insurance companies was to the effect that the beans had caked and spoiled and had lost their commercial value. Plaintiff admitted that he lost about 150 bushels of beans because they had been stored when green, but he testified that he took those out of the granary and fed them to his hogs, but that the remaining beans were good.

There was testimony that a cubic foot of beans weighed 48 pounds, and that 60 pounds made a bushel. On this basis plaintiff's testimony would fully support the verdict as to the quantity of beans burned. But it is argued that there were beans in only two of the bins, and that the ashes after the fire showed that only one of the bins was full.

The jury was told that they could not disregard an established physical fact, but we are unable to say that this was done. The testimony was conflicting as to the depth of the ashes in the bins, and as to whether any, and if any, how much of the ashes had been washed away by rain before the investigation was made by the Fire Marshal and the adjuster, for the insurance companies, and the testimony of these witnesses was to the effect that ashes were found near the site of the granary in addition to those found where the bins had been located.

These questions of fact are concluded by the verdict of the jury and as plaintiff's testimony was to the effect that there were more beans destroyed than he had recovered judgment for, we cannot say that the verdict contravenes any established physical fact. There was but little corroboration of plaintiff's testimony as to the

quantity of beans destroyed, but it was not required that there should have been if the jury believed his testimony to be true. We said in the case of *Ocker* v. *Nix,* 202 Ark. 1064, 155 S. W. 2d, 58, that ''The mere fact that appellee stands alone in his testimony . . . and that he is contradicted by several witnesses, . . . does not justify us in saying there was no substantial evidence to support the verdict.'' In the case cited we quoted from the case of *Norton & Wheeler Stave Co.* v. *Wright,* 194 Ark. 115, 106 S. W. 2d, 178, as follows: ''The question as to where lies the preponderance of the evidence is not for us to say. That is the duty of the trial judge, who, by his refusal to set aside the verdict, has set his seal of approval upon the truthfulness of the testimony given by appellee.'' Appellee's testimony, however contrary to other evidence is sufficient to sustain the verdict and the judgment must therefore be affirmed.