FIRST NATIONAL BANK of Lewisville  *v.*
Eddie MAYBERRY, Chylene Mayberry, and
Farmers Bank & Trust Company

CA 03-1135                              199 S.W.3d 716

Court of Appeals of Arkansas
Opinion delivered December 8, 2004
[Rehearing denied January 12, 2005.*]

*David P. Price*, for appellant.

*David W. Talley, Jr.*, for appellees.

---

\* BIRD, J., would grant rehearing.

Robert J. Gladwin, Judge. The Columbia County Circuit Court granted First National Bank of Lewisville ("First National") and Farmers Bank and Trust[1] foreclosure on Eddie and Chylene Mayberry's property when they defaulted on their payments. A foreclosure sale of the acreage portion of the Mayberrys' property was held, and appellant bought the property. The documents from the sale reflected a purchase price of $86,534.90, which amount would have satisfied the Mayberrys' debt as to all of their property that was foreclosed upon. When appellant attempted to conduct a sale on the Mayberrys' home place, the Mayberrys sought and obtained an injunction barring the sale of their home. At that point, appellant realized there was an error as to the bid and purchase price of the acreage and immediately filed a motion to vacate all of the documents related to the foreclosure sale. Appellant's motion was deemed denied after thirty days pursuant to Ark. R. App. P.—Civ. 4(b)(1). On appeal to this court, appellant argues that the trial court erred in not granting its motion to vacate because the documents contained a clerical mistake and error that arose from oversight or omission. We affirm.

After appellant initiated foreclosure proceedings against the Mayberrys, the matter went to trial. There was apparently some sympathy for the Mayberrys, and so an agreement was reached. The agreement was to have two sales, with the first sale being that of the land consisting of 11.69 acres and with the second sale being that of the Mayberrys' home resting on 2.10 acres. It was agreed that the sale on the Mayberrys' home place would be conducted only if the sale of the acreage failed to bring enough to satisfy the total debt, which was $74,660.77 plus accrued interest, costs, and attorney's fees.

At the sale of the acreage, John Upton, an officer at First National, was appointed commissioner for the sale. When no serious bids were received, Upton bid on the property, and it was sold to appellant. Thereafter, documents were filed, including the commissioner's report of sale, an order confirming the sale, an order approving the commissioner's deed, and the commissioner's deed. The sale price listed on all of the documents was $86,534.90.

---

[1] Farmers Bank & Trust was named as a defendant in First National's original complaint because First National's lien was subject to a first mortgage held by Farmers as to the second portion of the Mayberrys' property; however, Farmers is not a party to this appeal.

A sale was then scheduled to sell the Mayberrys' home place, and the Mayberrys filed and were granted an injunction because they contended that the acreage had been sold for the entire amount of the judgment. First National immediately filed a motion to vacate, requesting that all of the documents be set aside because First National alleged that there had been a clerical error as to the bid and sale price.

At a hearing on the matter, Upton testified that, besides himself and appellant's attorney, only a couple of people came to the sale of the acreage. He said that those people asked a few questions and stated that the most they would pay for the property was $5,000. Upton testified that he then made a bid on the property on behalf of First National for the total amount of the judgment less $60,000 (representing the equity in the Mayberrys' home place), for a total of $26,534.90.

The trial court did not rule on First National's motion to vacate, and so it was deemed denied after thirty days. *See* Ark. R. App. P.—Civ. 4(b)(1). This appeal followed.

Arkansas Rule of Civil Procedure 60(a) provides that the court may vacate an order within ninety days to correct errors or mistakes or to prevent the miscarriage of justice. There are two exceptions to the ninety-day limitation, which are set forth in (b) and (c). Rule 60(b) provides that clerical errors and mistakes arising from oversight or omission may be corrected at any time. There are seven enumerated grounds set forth in Rule 60(c), including: (1) granting a new trial because evidence was discovered after ninety days; (2) granting a new trial in proceedings against a defendant who was constructively summoned but did not appear; (3) misprisions of the clerk; (4) misrepresentation or fraud; (5) erroneous proceedings against a minor or person deemed incompetent; (6) the death of one of the parties; (7) errors in a judgment shown by an infant within twelve months after reaching the age of eighteen years. A trial court's power to correct mistakes or errors is to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. *Lord v. Mazzanati*, 339 Ark. 25, 2 S.W.3d 76 (1999).

First National argues that the trial court should have entered an order vacating all of the documents regarding the sale of the acreage because they each contained a clerical error arising from oversight or omission. While the trial court did not rule on appellant's motion to vacate, there was evidence that the mistake

here was more substantive than a mere clerical error. The dissent characterizes the error here as a "minor [mistake], being the substitution of one amount of money for another amount," which seems to suggest that a mere typographical error occurred when some numbers were transposed. That was not the case. Appellant's attorney, David P. Price, failed to instruct his secretary that the paperwork would not be done in the "usual and customary" manner in that the entire amount of the judgment was not bid at the sale; in fact, according to his affidavit, Price directed his secretary to prepare the normal post-foreclosure sale documents. Price did not check the numbers in any of the four documents before giving them to Upton, who further compounded the error. Upton, president and chief operating officer at First National, testified that he had acted as commissioner many times and acknowledged that, as a banker, he was required to review and sign documents. Despite his experience, Upton failed to catch what is described in appellant's own motion as a "clear and obvious mistake." Upton further testified that he generally accepted what was received by appellant's attorney as being accurate. As a result of this assumption, Upton allowed four separate documents containing an "obvious" error to the tune of $60,000 escape his notice when all he had to do was check to see that the numbers were correct before signing the documents and submitting them to the court. While we recognize that everyone makes mistakes, Rule 60 should not be viewed as providing a loophole to correct an error that would otherwise amount to negligence.

*Black's Law Dictionary* defines "negligence" as:

> 1. The failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights. 2. A tort grounded in this failure, usu. expressed in terms of the following elements: duty, breach of duty, causation, and damages.

*Black's Law Dictionary* 1061 (8th ed. 2004).

■ We disagree with appellant's assertion that the error complained of here was the type of "clerical error" contemplated by Rule 60(b). Rather, this error resulted from nothing but inadequate representation by appellant's own president and by its

attorney. Under these circumstances, we cannot say that the trial court erred in not vacating all of the foreclosure documents pursuant to Rule 60(b).

Affirmed.

GRIFFEN, VAUGHT, BAKER and ROAF, JJ., agree.

BIRD, J., dissents.

SAM BIRD, Judge, dissenting. I respectfully dissent from the opinion of the majority herein because I disagree with its conclusion that the error that appellant sought to have corrected by the trial court in this case was not the type of clerical error that is subject to correction under Ark. R. Civ. P. 60(b).

I think it would be helpful to the reader's understanding of my position to more clearly set forth the factual scenario from which this case arose. This appeal arises from a foreclosure action involving two parcels of land owned by appellees, Eddie and Chylene Mayberry (the Mayberrys). One of the parcels contains 11.69 acres ("the acreage parcel") and is the site of some chicken houses. The second parcel contains 2.10 acres and is the site of the Mayberrys' residence ("the residence parcel"). The acreage parcel was subject to a first mortgage lien in favor of First National Bank of Lewisville (First National), securing a promissory note in the principal amount of $69,500. The same mortgage also constituted a second lien on the residence parcel, subject to a first mortgage lien in favor of Farmers Bank & Trust Company.

The Mayberrys defaulted on their payments due to First National and it initiated foreclosure proceedings against them.[1] The Mayberrys filed a pro se answer stating simply, "We wish for the foreclosure be denied on the property in Schedule B [the residence parcel]."

The foreclosure action was called for trial on January 30, 2003, First National appearing by its attorney and the Mayberrys appearing pro se. However, in lieu of a trial, the parties entered into an agreement that was memorialized by a handwritten entry on the court's docket sheet dated January 30, 2003, which read as follows:

---

[1] As noted by the majority, although Farmers Bank was a party defendant in the foreclosure action, it has not filed a brief, apparently because its status as first lien holder on the residence parcel was not diminished by First National's suit or the foreclosure decree entered therein.

> Case called for trial: D. Price for Bk of Lewisville, Eddie and Chylene Mayberry appear pro se, Parties agree to foreclosure in rem, Bank agrees to two sales — will sell property one parcel at time — will sell non–home property first — determine defic then attempt to work out something on home.

On the same date, a decree of foreclosure was entered in which judgment in rem against both parcels of land was awarded in favor of First National in the amount of $86,534.90. John Upton, First National's president, was appointed as commissioner to advertise and sell the two parcels. Consistent with the above-quoted docket entry, the commissioner advertised notice of the sale of the acreage parcel on February 19, 2003. Following the sale, the commissioner filed his report of sale that described only the acreage parcel and stated, among other things, as follows:

> First National Bank of Lewisville did bid and offered [sic] the sum of $86,534.90 for all of the property described in said decree. This was the highest and best bid made at such offering and said property was struck off and sold to said bidder, subject to the approval of this court, at the price offered.

On March 3, 2003, the court entered its Order of Confirmation of Sale, which recited, among other things, the sale price of $86,534.90, and its Order Approving Commissioner's Deed. On that date, the Commissioner's Deed was filed, which described the acreage parcel and referred to a consideration in the amount of $86,534.90.

On May 2, 2003, the commissioner advertised the sale of the residence parcel to take place on May 22, 2003. However, before the sale occurred, the Mayberrys, then represented by counsel, filed suit to prevent the sale of the residence parcel, alleging that the $86,534.90 purchase price received for the sale of the acreage parcel totally satisfied the Mayberrys' indebtedness to First National. A preliminary injunction was entered. Thereafter, First National moved the court to vacate its prior orders relating to the sale of the acreage parcel, alleging that as a result of the mistake and inadvertence of the scriveners of the orders, the orders erroneously recited that First National had bid the entire amount of its judgment for the acreage parcel, that First National had not bid the entire amount of the judgment at said sale, and that the commissioner's report of sale was erroneous in reporting that First National had bid the entire amount of the judgment for the acreage parcel.

At the hearing on First National's motion to vacate, Mr. Upton testified that at the sale of the acreage parcel on February 19, 2003, he discussed the condition of the property with another person whom he did not know, and that the person said that the most he would pay for the property was $5,000, but that the person made no formal bid. Upton testified that when the bidding was opened, he made a bid on behalf of the bank for "the judgment less $60,000, which amounted to $26,534.90." He explained that the amount of his bid was determined by subtracting from the judgment ($86,534.90) the estimated "equity position" that the Mayberrys had in the residence parcel based on an appraisal that had been done when the loan was originally made. Upton testified that after the sale, he signed a report of sale prepared by his lawyer that incorrectly stated that the amount of the bank's bid was $86,534.90, but that he did not notice the mistake. He reiterated that the bank's bid at the sale had been $26,534.90, but that the wrong amount was put in the report.

On cross examination, Upton testified that he probably did not look at the report of sale and commissioner's deed when he signed them because he relied on his lawyer to put in the accurate information. Upton stated that the sale took place at the Columbia County courthouse, that he announced the opening and closing of the bidding, that he bid $26,534.90, and that he made no written record of the proceedings. Upton acknowledged that the court's orders confirming the sale and approving the commissioner's deed were entered in reliance on what was contained in his report of sale.

An affidavit of First National's attorney was also presented to the court at the hearing. The affidavit explained that the post-sale foreclosure documents were prepared by the attorney's secretary in the "usual and customary" manner, which included showing that the entire judgment amount had been bid for the land sold. The affidavit recited that the lawyer did not "catch" the error in the documents before they were sent to Upton.

Inexplicably the court made no findings of fact or conclusions of law, and entered no order disposing of First National's motion. First National deemed its motion to have been denied after the lapse of thirty days, and this appeal followed. First National raises only one point on appeal: that the court should have vacated the commissioner's report of sale, the order approving the sale, the commissioner's deed, and the order approving the commissioner's deed because they contained a clerical mistake or an error arising from oversight or omission.

It appears to be the position of the majority: (1) that the mistake described above is not a clerical error that is subject to being corrected pursuant to Rule 60(b), but that it is a "more substantive" mistake; and (2) that First National's lawyer, who admitted making the mistake, was negligent and, therefore, ultimately responsible for his secretary's placement of the wrong amounts in the foreclosure documents. I do not agree that Rule 60(b) is available only for the correction of mistakes that are of little or no substance, or that the relief is available only to parties who are not at fault in causing or contributing to the mistake. These two premises are discussed below.

*That the error in this case is not a clerical error.*

Without citation to any authority, the majority concludes that there are no grounds for setting aside the erroneous orders in this case under Rule 60(a) and (b).[2]

I do not agree that the mistake demonstrated in this case is subject to the ninety-day limitation imposed by Rule 60(a). Rather, I submit that the exception to the ninety-day limitation provided for in Rule 60(b) is applicable to this case. Rule 60(b) provides, in pertinent part:

> (b) *Exception; Clerical Errors.* Notwithstanding subdivision (a) of this rule, the court may at any time, with prior notice to all parties, correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission.
> . . .

Although Rule 60(b) is embodied in our rules of civil procedure, as we said in *Harrison v. Bradford*, 9 Ark. App. 156, 655 S.W.2d 466 (1983), the rule is merely a restatement of our well-settled law that "[c]ourts have an inherent power to enter orders correcting their judgments where necessary to make them speak the truth and reflect actions accurately,"[3] but noting that this power "is confined to

---

[2] Although the majority opinion discusses the seven grounds specifically enumerated in Ark. R. Civ. P. Rule 60(c) for setting aside judgments, Rule 60(c) is irrelevant to this case because First National is not seeking relief for any of the reasons described in any of those seven enumerated grounds.

[3] Although *Harrison v. Bradford* speaks of Ark. R. Civ. P. 60(a), when that case was decided in 1983, Rule 60(a) consisted of what is now essentially Rule 60(b), providing that the

correction of the record to the extent of making it conform to the action which was in reality taken. It does not permit the change of a record to provide something that in retrospect should have been done but was not done." *Harrison*, 9 Ark. App. at 158, 655 S.W.2d at 468.

*Black's Law Dictionary* defines "clerical error" as

> An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning and determination. Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call. A court can correct a clerical error at any time, even after judgment has been entered.

*Black's Law Dictionary* 582 (8th ed. 2004).

The error in the case at bar is precisely the kind of error defined in *Black's*. The mistake is a minor one, being the substitution of one amount of money for another amount,[4] a mistake that the evidence demonstrates to have resulted from a secretary's lack of knowledge that, contrary to what was "usual and customary," the amount of the bank's bid was less than the amount of its judgment. The majority's characterization of the mistake as a substantive one, rather than a minor one, is an emphasis on the consequences of the mistake, not the nature of the mistake itself. Obviously, few, if any, litigants would go to the trouble and expense of seeking to invoke the authority of the court to correct

---

court had the power at any time to correct clerical mistakes in judgments and errors arising from oversight or omission. Rule 60 was amended by per curiam order on January 27, 2000, in response to case law. Prior to this amendment, Rule 60(a) and (b) stated as follows:

> (a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own motion or on the motion of any party and after such notice, if any as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

> (b) *Ninety-Day Limitation.* To correct any error or mistake or to prevent the miscarriage of justice, a decree or order of a circuit, chancery or probate court may be modified or set aside on motion of the court or any party, with or without notice to any party, within ninety days of its having been filed with the clerk.

[4] I do not mean to suggest, as intimated by the majority opinion, that the error involved here is merely a typographical error resulting from the transposition of numbers.

a mistake, big or small, if its effect was without consequence. The mistake in the case at bar is a minor one with significant consequences to the parties.

The error in the case at bar is also the type that is subject to correction under *Harrison v. Bradford, supra.* The only evidence presented at the hearing on First National's motion was that Mr. Upton bid $26,534.90 at the foreclosure sale, but that, due to a mistake by the bank's lawyer and his secretary, the post-sale foreclosure documents recited a bid of $86,534.90. Appellee offered no evidence to rebut Upton's testimony, but argues only that there was no *other* evidence to corroborate Upton's version of the events. In the first place, no other evidence was necessary. *See, e.g., Travelers Fire Ins. Co. v. Arnold,* 212 Ark. 1006, 208 S.W.2d 773 (1948) (recognizing that "[t]he mere fact that [a witness] stands alone in his testimony . . . does not justify [the court] in saying there was no substantial evidence to support the verdict").

Furthermore, there *was* other evidence that corroborated Upton's testimony. Specifically, on January 30, 2003, to avoid the necessity of a trial of the foreclosure action, First National and the Mayberrys agreed, solely as a benefit to the Mayberrys, that the bank would sell the two parcels of land at separate public sales, selling the acreage parcel first to see how much it would bring, followed by a sale of the residence parcel only if the sale of the acreage parcel left a deficit balance on the bank's judgment against the Mayberrys. An agreement for separate sales would have been meaningless and a second sale useless if First National had intended to bid the entire amount of its judgment at the sale of the acreage parcel. The existence of that agreement, as set forth on the court's docket and not disputed by appellee, is corroborative of and consistent with Upton's testimony that he did not bid the $86,534.90 contained in the post-sale foreclosure documents. As demonstrated by the only evidence presented on the issue, a change of the post-sale documents to reflect a bid of $26,534.90 would be "a correction of the record to the extent of making it conform to the action that was in reality actually taken." *Harrison,* 9 Ark. App. at 158, 655 S.W.2d at 468.

*That First National's president and lawyer are to blame for the mistake.*

Without a doubt, the error that occurred in this case was initiated when the bank's lawyer failed to instruct his secretary that the post-sale foreclosure documents should not be prepared in the usual and customary manner of reciting that the sale price was

equal to the amount of the bank's in rem judgment. No doubt, the mistake was continued when the lawyer and the banker failed to notice that the wrong number had been used in the documents to describe the amount bid at the foreclosure sale. And, no doubt, every error occurs because someone does something wrong or fails to do something right. However, neither subsection (a) nor (b) of Rule 60 provides that mistakes can only be corrected if they were not caused by the party seeking the correction or only if requested by the innocent party. Nor is relief prohibited under Rule 60 (a) or (b) where the mistake is the result of a party's negligence. Rather the correction of errors is permitted to prevent the miscarriage of justice, without regard for who is the perpetrator of the mistake. *See, e.g., In re Merry Queen Transfer Corp.*, 266 Fed. Supp. 605 (E.D.N.Y. 1967) (claimants' failure to include interest in judgment found to be a "clerical mistake" within the meaning of Rule 60 and ordered to be corrected accordingly).

For obvious reasons, the Mayberrys do not argue that there has been no miscarriage of justice as a result of First National's mistake. In fact, the Mayberrys have become the beneficiaries of a $60,000 windfall by being allowed to retain the equity in their residential property, free and clear of First National's mortgage; and First National has suffered the loss of its only significant collateral for their loan to the Mayberrys, all because the bank agreed, as an accommodation to the Mayberrys, to sell the two parcels of land at separate sales.

The issue for us to decide is not whether the mistake in this case was the result of the negligence of a party, for the answer to that question is obvious. Rather, our job is to determine whether the circuit court erred in declining to enter an order granting First National's motion to vacate court orders that have indisputably resulted in an miscarriage of justice because they contained clerical errors that, indisputably, resulted from oversight or omission. For the reasons stated above, I believe that it did.