FIRST NATIONAL BANK of LEWISVILLE *v.*
Eddie MAYBERRY, Chylene Mayberry, and
Farmer's Bank & Trust, Magnolia

06-760                                                  244 S.W.3d 676

Supreme Court of Arkansas
Opinion delivered December 7, 2006

*Price Law Firm*, by: *David P. Price*, for appellant.

*David W. Talley, Jr.*, for appellees.

Tom Glaze, Justice. This appeal was originally before our court in March of this year; however, we dismissed the appeal without prejudice because there was no final order on the issue being appealed. *See First Nat'l Bank of Lewisville v. Mayberry*, 366 Ark. 39, 233 S.W.3d 152 (2006) (holding that this court "lacks jurisdiction to hear the instant appeal until there is a final, appealable order")

. The trial court entered a final order on April 11, 2006, and the appeal is now properly before us.

This appeal stems from a foreclosure sale and asks this court to determine what constitutes a "clerical error" within the meaning of Ark. R. Civ. P. 60(b). The appellant, First National Bank of Lewisville ("First National"), extended a mortgage to appellees Eddie and Chylene Mayberry in January of 1999. The Mayberrys executed a promissory note with First National for $69,500, at a contract rate of 9.006% interest, to be paid in fifteen equal yearly installments of $8,629.37, beginning on January 8, 2000. The mortgaged property consisted of 11.69 acres of land in Columbia County. First National also had a second lien on an additional 2.10 acres; the first lien holder on that property was Farmers Bank and Trust of Magnolia ("Farmers Bank").

The Mayberrys defaulted on their promissory note, and on August 21, 2002, First National filed a complaint seeking foreclosure on the properties. At the time of the complaint, First National alleged, the Mayberrys were indebted to the bank in the amount of $74,660.77, plus interest. The Mayberrys filed a handwritten, pro se answer that stated that the "foreclosure against our home in Schedule B [the 2.10 acres on which their home was located] should be released." Farmers Bank filed an answer on September 12, 2002, asserting its first lien on the 2.10 acres.

The matter was set for trial on January 30, 2003. However, rather than going to trial on that day, the court's docket sheet reflects the following:

> Case called for trial: D. Price for Bk of Lewisville, Eddie & Chylene Mayberry appear *pro se*, parties agree to foreclosure *in rem*, Bank agrees to two sales — will sell property one parcel at [a] time — will sell non-home parcel first — determine defic[iency] then attempt to work out something on home.

The same day, the trial court entered a decree of foreclosure. In that judgment, the court found that the Mayberrys were in default and awarded First National and Farmers Bank judgments in rem against the property. The court further found that the payoff amount for the indebtedness to First National was $78,472.64, and awarded First National a judgment in rem against the property in the amount of $78,472.64, plus interest and costs, for a total judgment in rem of

$86,534.90.[1] The court declared that if the Mayberrys did not satisfy the judgment within ten days, the property would be sold, and the court appointed John Upton, President of First National, as Commissioner of Sale. Accordingly, on January 30, 2002, Upton published a Notice of Commissioner's Sale stating that the property would be sold at public auction on February 19, 2003.

On February 27, 2003, Upton published a Commissioner's Report of Sale. In that Report of Sale, Upton indicated that the 11.69 acres had been sold as follows:

> Pursuant to such offering, First National Bank of Lewisville did bid and offered the sum of $86,534.90 for all of the property described in said Decree. This was the highest bid made at such offering, and said property was struck off and sold to said bidder, subject to the approval of this court, at the price offered.

Subsequently, on March 11, 2003, the trial court entered its Order of Confirmation of Sale, reiterating that First National had purchased the property for $86,534.90. On the same date, both an Order Approving Commissioner's Deed and the Commissioner's Deed were filed in Columbia County Circuit Court, affirming that the purchase price of the 11.69 acres was $86,534.90.

On May 2, 2003, Upton published a Notice of Commissioner's Sale, indicating that the Mayberrys' other 2.10 acres would be sold at public auction on May 22, 2003. However, on May 19, 2003, the Mayberrys filed a complaint for injunction. In their complaint, the Mayberrys alleged that First National sold the 11.69 acres of property on February 19, 2003, for the sum of $86,534.90, an amount that represented the entire amount of the mortgaged indebtedness. The Mayberrys also argued that the bank had not made any effort to comply with the circuit court's January 30, 2003, docket notation that directed the parties to "attempt to work out something on the home." Further, the Mayberrys contended that, since the 11.69 acres was sold at the February 19 sale for the entire amount of the indebtedness, there was no need to proceed with the foreclosure sale against the 2.10 acres on which their home was located.

---

[1] The court also awarded Farmers Bank a judgment in rem in the amount of $53,693.15 (the amount of the indebtedness plus interest, costs, and attorney's fees). Farmers Bank, however, is not a party to this appeal.

The trial court entered an order granting the Mayberrys a preliminary injunction on May 20, 2003, directing First National to "cease its attempt to sell the real property." On May 21, 2003, First National filed a motion pursuant to Ark. R. Civ. P. 60(a), seeking to vacate the Commissioner's Report of Sale, the Order Confirming Sale, the Order Approving Commissioner's Deed, and the Commissioner's Deed, arguing that the $86,534.90 amount reflected on the Commissioner's Report of Sale, the Order of Confirmation of Sale, the Order Approving Commissioner's Deed, and the Commissioner's Deed was "an error caused by mistake and inadvertence of the scrivener of the order provided to the court." Specifically, First National contended that there was no intent on its part to bid the entire judgment lien at the sale, and that the statement in the Commissioner's Report of Sale was "a result of mistake and inadvertence."

The trial court held a hearing on First National's motion to vacate on June 4, 2003. At that time, Upton testified that, at the February 19, 2003, sale, there were no formal bids made by any third parties. He noted that two people showed up, and some jokes were made about the state of the property, and that one person said that the most they would ever pay for it would be $5,000. Upton conceded that the bank made a bid on the property, but asserted that the bid was "the judgment less $60,000, which amounted to $26,534.90. $60,000 was the equity position that would have been from their home." After the sale was over, Upton stated, the attorney for the bank submitted to him a Report of Sale that declared that the bank offered the sum of $86,534.90. Upton said that sum was incorrect, but he did not notice it "through an oversight." He also said that he did not catch the same mistake on the Commissioner's Deed that was submitted to the court for approval, again "because of an oversight on [his] part." The amount that was actually bid, Upton claimed, was $26,534.90.

On cross-examination, Upton conceded that he signed the Commissioner's Report of Sale and the Commissioner's Deed that he filed with the court. In addition, Upton testified that he generally accepted what he received from his attorney as being accurate, and that he did not "read every single letter of the day." Upton further agreed that he signed the Commissioner's Report of Sale that he filed with the court, and he stated that he "would assume that the judge was going to rely upon [his] assertions in that document."

Following the hearing, the trial court did not issue a ruling or enter an order granting or denying First National's motion to vacate the order granting the injunction. As such, First National apparently assumed that its motion was deemed denied on June 20, 2003, and it filed a notice of appeal on July 17, 2003, and argued to the court of appeals that the trial court erred in failing to grant its motion to vacate. The court of appeals rejected First National's arguments, concluding that the mistakes on the various documents were not the sort of "clerical error" that Rule 60 was designed to correct; the court held that "this error resulted from nothing but inadequate representation by [First National's] own president and by its attorney." *First Nat'l Bank of Lewisville v. Mayberry*, 89 Ark. App. 5, 8, 199 S.W.3d 716, 719 (2004).

First National filed a petition for review with this court, which we granted on January 27, 2005. As mentioned above, this court dismissed First National's appeal because the trial court had not entered a final, appealable order on the Rule 60 issue. Following this court's opinion, the circuit court entered an order on April 11, 2006, finding that the mistake alleged by First National was "more substantive than a mere clerical error and is not the type of clerical error contemplated by Rule 60(b)." Accordingly, the circuit court denied First National's May 21, 2003, motion to vacate and made the May 20, 2003, preliminary injunction permanent. Finally, the court concluded that, the 11.69 acres having been sold for the entire amount of the judgment awarded to First National, the judgment granted in the foreclosure decree was deemed satisfied. First National filed a timely notice of appeal from this order, and now brings this appeal.

On appeal, First National argues that the errors complained of in this case are the kinds of "clerical errors" contemplated by Ark. R. Civ. P. 60; it submits that the pleadings and orders "in no way reflect what the parties and the trial court originally intended." Thus, First National contends, the trial court should have granted its motion to vacate pursuant to Rule 60, which provides in relevant part as follows:

> (a) *Ninety-Day Limitation.* To correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment, order or decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk.

(b) *Exception; Clerical Errors.* Notwithstanding subdivision (a) of this rule, the court may at any time, with prior notice to all parties, correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

First National cites cases from this court and the court of appeals holding that courts have the inherent authority to correct judgments "where necessary to make them speak the truth and reflect actions accurately." *See, e.g., Harrison v. Bradford,* 9 Ark. App. 156, 655 S.W.2d 466 (1983) (citing *King & Houston v. State Bank,* 9 Ark. 185 (1848)). In *Lord v. Mazzanti,* 339 Ark. 25, 2 S.W.3d 76 (1999), this court held that Rule 60[2] "is merely a restatement of Arkansas's well-settled law, empowering a trial court to enter nunc pro tunc judgments to cause the record to speak the truth." *Lord,* 339 Ark. at 28, 2 S.W.3d at 78. Noting that trial courts may correct clerical errors at any time, the *Lord* court stated that "a trial court's power to correct mistakes or errors is to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken." *Id.* at 29, 2 S.W.3d at 79 (citing *Chastain v. Davis,* 294 Ark. 134, 741 S.W.2d 632 (1987); *Fitzjarrald v. Fitzjarrald,* 233 Ark. 328, 344 S.W.2d 584 (1961)).

The question in this case is whether the mistake complained of — the statement in the Commissioner's Report of Sale and the other related documents that First National had bid $86,534.90 — is the kind of "clerical error" that can be corrected by the application of Rule 60(b). First National maintains that Rule 60 is merely a restatement of Arkansas's well-settled law that empowers the trial court to enter nunc pro tunc judgments to cause the record to speak the truth. In support of this argument, First National cites cases from federal jurisdictions that appear to hold that Rule 60 can be used to correct errors by attorneys, as well as errors by the court or the court clerk. *See, e.g., Pattiz v. Schwartz,* 386 F.2d 300, 303 (8th Cir. 1968) (concluding that "[r]elief may be had from the clerical mistakes of the court, clerk, jury, or party"); *In re W. Tex. Mktg. Corp.,* 12 F.3d 497, 504-05 (5th Cir.

---

[2] At the time of the *Lord* opinion, the relevant subsection of the Rule was Rule 60(a). The rule has since been rewritten so that the subsection pertaining to clerical errors is Rule 60(b).

1994) (stating that, "[a]s long as the parties' intentions are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed"); *United States v. Mansion House Center North Redev. Co.*, 855 F.2d 524, 527 (11th Cir. 1988) (circuit court has the power to correct omissions in its judgment so as to reflect what was understood, intended, and agreed upon by the parties and the court).

Arkansas cases, however, have not shown such lenience for mistakes by attorneys. For example, in *Rossi v. Rossi*, 319 Ark. 373, 892 S.W.2d 246 (1995), this court affirmed a trial court's refusal to enter an order *nunc pro tunc* that would have shown that the attorney timely filed a notice of appeal. In doing so, this court held that "[t]he error was not merely an error by the circuit clerk. *It was an error by the attorney.* Nunc pro tunc *orders are not to correct errors by an attorney.*" *Rossi*, 319 Ark. at 375, 892 S.W.2d at 247 (emphasis added). The *Rossi* court further held as follows:

> A trial court is permitted to enter an order *nunc pro tunc* when the record is being made to reflect that which occurred but was not recorded due to a misprision of the clerk, but a court may not change the record to do that which should have been done but was not.

*Id.* at 376, 892 S.W.2d at 247 (citing *Canal Ins. Co. v. Arney*, 258 Ark. 893, 530 S.W.2d 178 (1975)).

More recently, this court relied on *Rossi* to reach a similar conclusion in *Wandrey v. Etchison*, 363 Ark. 36, 210 S.W.3d 892 (2005). There, the attorney for appellant Wandrey purported to fax a copy of the notice of appeal to the clerk's office; however, even though the attorney received a fax confirmation showing the notice of appeal arrived at the clerk's fax machine in a timely manner, the clerk, for unknown reasons, did not file-mark the notice of appeal. When counsel realized that the notice of appeal was late, he filed a "Rule 60 motion to correct misprision of the clerk and amended motion for extension of time to lodge the record," asking the trial court to enter an order directing that the notice of appeal be entered *nunc pro tunc* to reflect that the notice was received and filed as of the date it was faxed, in order to correct the "clerical error" of not filing the notice. The trial court denied counsel's motion, and Wandrey appealed. *Wandrey*, 363 Ark. at 38, 210 S.W.3d at 893.

In affirming the trial court's decision, this court rejected Wandrey's argument that the untimely filing of the notice of appeal was subject to correction under Rule 60. However, we continued, stating as follows:

> However, even assuming that Wandrey's error were subject to being corrected with a Rule 60 motion, she is still not entitled to relief. It is true that this court has held that a trial court may, under Rule 60(a), correct a clerical error at any time. *See, e.g., Holt Bonding Co., Inc. v. State*, 353 Ark. 136, 114 S.W.3d 179 (2003); *State v. Dawson*, 343 Ark. 683, 38 S.W.3d 319 (2001); *Taylor v. Zanone Properties*, 342 Ark. 465, 30 S.W.3d 74 (2000); *Lord v. Mazzanti*, 339 Ark. 25, 2 S.W.3d 76 (1999).

> [The *Wandrey* court then cited *Rossi* as follows:]

> Appellant asks us to make an exception in this case because, he contends, a clerical error by the circuit clerk was the reason for his failure to timely give the notice of appeal to the chancery clerk, and, since it was the circuit clerk's error, the chancellor erred in refusing to order that a notice of appeal be entered *nunc pro tunc*. The request for an exception in this case is without merit. The error was not merely an error by the circuit clerk. It was an error by the attorney. *Nunc pro tunc* orders are not to correct errors by an attorney. It is the duty of the attorney, not of the clerk, to perfect an appeal. *Edwards v. City of Conway*, 300 Ark. 135, 777 S.W.2d 583 (1989).

> *Rossi*, 319 Ark. at 374–75.

> . . . .

> We reach the same result in the present case. Wandrey argues that she faxed the notice of appeal to the circuit clerk's office, so she concludes that the fact that the notice was not filed clearly must have been the clerk's fault. However, that excuse did not prevail in *Rossi*, and it does not prevail here. The error was the attorney's, because counsel could — and should — have called the clerk's office and double-checked to make sure the faxed notice of appeal had been received and file-marked. As stated above, nunc pro tunc *orders are not to correct errors by an attorney*, nor are they intended to make the record reflect something that did not happen (here, the filing of the notice of appeal in the clerk's office). As such, the trial court did not abuse its discretion in denying Wandrey's motion for a *nunc pro tunc* order.

*Wandrey*, 363 Ark. at 40–41, 210 S.W.3d at 895–96 (emphasis added) (citation omitted).

Thus, our court is less forgiving than are the federal courts of cases in which the mistake complained of is clearly the attorney's fault, rather than being a clerical error made by the court or court staff. In the present case, it is obvious that the problem was the fault of First National's attorney and its president; Upton admitted that he should have read the documents and did not "catch" the mistake, and First National's attorney submitted an affidavit with the motion to vacate stating that he "did not catch this scrivener's error." Counsel stated that, "[t]hrough mistake and inadvertence I did not make sure that the numbers that were put in that paperwork were what was bid at the sale." In that affidavit, First National's attorney even apparently attempted to shift some of the blame to his secretary, stating that he directed the secretary to prepare the foreclosure documents, and that the secretary did "what was usual and customary" and entered the entire amount owed on the documents.

The trial court, however, found that Upton's testimony that he simply made a mistake was not credible, noting that Upton had a "great deal of familiarity and experience with judicial sales and legal documents." Thus, the trial court did not believe Upton when Upton claimed that the information contained in the Commissioner's Report of Sale, along with the other foreclosure documents, did not accurately reflect what occurred at the sale on February 19, 2003. The trial court specifically stated that it was of the opinion that First National bid its judgment and costs, as reflected in all of the prepared documents. Thus, the court concluded that the mistake alleged by First National was "more substantive than a mere clerical error and is not the type of 'clerical error' contemplated by Rule 60(b)." We have repeatedly held that the trial court is in the superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *See Bobo v. Jones*, 364 Ark. 564, 222 S.W.3d 197 (2006); *Cox v. Miller*, 363 Ark. 54, 210 S.W.3d 842 (2005); *Carson v. Drew County*, 354 Ark. 621, 128 S.W.3d 423 (2003).

In sum, although First National urges that these mistakes amounted to nothing more than a "clerical error," there is simply no Arkansas case law that allows resort to Rule 60 when such an error is made by counsel. Moreover, the circuit court specifically found testimony bearing on the alleged clerical mistake to be unbelievable. Accordingly, we affirm the trial court's denial of First National's motion to vacate.

GUNTER, J., not participating.