## Phillip LINN *v.* Brenda Linn MILLER

CA 06-1479                                            261 S.W.3d 471

Court of Appeals of Arkansas
Opinion delivered September 5, 2007

*James L. Bargar*, for appellant.

*Kent Tester*, for appellee.

WENDELL L. GRIFFEN, Judge. Phillip Linn appeals from an order modifying a divorce decree. He argues that the trial court lacked jurisdiction to make the modifications. We agree and reverse and remand.

### Factual and Procedural History

Phillip Linn and Brenda Linn Miller were divorced in 2004 after more than thirty years of marriage. Their property-settlement agreement divided, among other things, a 192-acre tract of land, with Phillip to receive 112 acres and Brenda to receive 80 acres. Other than these proportions, no particular manner of division was specified.

Later, a survey separated the tract into 80- and 112-acre parcels. Brenda's parcel was a reverse-L-shaped tract along the eastern side of the acreage. Phillip received the remainder of the land.[1] The manner in which the boundaries were drawn gave Phillip a strip of land across the top of Brenda's northern section. This prevented Brenda from accessing a public road just north of her parcel. However, Brenda did not discover this situation when viewing the survey. She therefore voiced no objection when a divorce decree was entered stating that the 192 acres "shall be" surveyed and divided into 80- and 112-acre parcels. (The trial court apparently was not aware that a survey had already taken place.)

The decree also provided that an $18,000 mortgage balance on the 192 acres would be prorated between the parties based on the amount of acreage each held. Thus, Brenda was responsible for 41.7% (80/192) of the mortgage payments and Phillip for 58.3% (112/192). Each party was to "assume all obligations pertaining to the real property in their name including any indebtedness . . . and . . . indemnify and hold the other harmless from same."

Thereafter, Brenda and Phillip disagreed over the enforcement of the decree, and the trial judge ordered them to mediation. This produced a Memorandum of Understanding that dealt, in part, with the 192 acres but did not change the division of the land or the parties' pro rata obligations on the mortgage. The parties did agree that each would be responsible for his or her own attorney fees and costs. The Memorandum was adopted in an amended divorce decree dated April 21, 2005. The decree stated that the court retained jurisdiction for "such further Orders as may from time to time be necessary for the enforcement of this Amended Decree of Divorce."

In late 2005, Brenda decided to sell ten acres of her eighty-acre tract. However, she was unable to do so because she could not obtain a partial release of the mortgage for the ten acres alone. To accomplish the sale, she paid off the entire mortgage balance on the 192 acres. Around this same time, she also discovered that the northern part of her property did not extend all the way to the public road. As a result, she filed a motion on November 17, 2005, asking the court to "clarify" the April 21, 2005 decree. She sought

---

[1] As surveyed, the tract was actually closer to 198 acres, which resulted in Brenda receiving 81.91 acres and Phillip receiving 115.86 acres.

ownership of or an easement in the northern part of the property to allow ingress and egress to the public road and asked the court to require Phillip to reimburse her $8124.04 for his share of the mortgage payoff. Phillip asserted that the trial court lacked jurisdiction to modify the decree and, in any case, that no modifications were necessary.

At the hearing on Brenda's motion, she testified that the mortgage on the 192 acres had a maturity date of 2021 and that during the marriage, she and Phillip made mortgage payments of $274 per month. However, in order to close her sale of the ten acres in 2005, she paid the entire $16,969.65 balance on the mortgage. She stated that, after receiving some money from Phillip, he owed her $8124.04 for his portion of the payoff. Brenda also testified that she saw the survey of the 192 acres around the time the original divorce decree was entered, but she did not "understand that kind of thing" and believed her property went all the way to the public road. She said that she learned she was "landlocked" when another survey was taken in 2005 in connection with her sale of the ten acres. On cross-examination, she testified that during the period that the court approved the property-settlement agreement and during the time that she and Phillip were in mediation, the question of what would happen if one of them sold his or her portion of the property "never came up" and "really wasn't an issue at the time."

Surveyor Jeffrey West testified that when he conducted the survey, Phillip instructed him to divide the property in such a way as to give him a 58.5-foot strip running across the northern boundary of the property. West offered no testimony that Phillip's request was nefarious or motivated by improper motives; rather, he said, Phillip told him that the particular strip of land had some historical significance to Phillip's family. West also noted that Brenda's son, Darren Linn, was present during the survey. West acknowledged that Brenda's property line stopped before it got to the public road on the north and that .9 acres of Phillip's property separated her from the road.

Phillip testified that he did not intend to "spite" Brenda by asking the surveyor to give him the strip of land across her northern boundary. He said that the property once belonged to his grandfather. He admitted in his testimony that he owed Brenda $8124.04 on the mortgage and that nothing would prevent him from taking out a mortgage on his acreage to pay her off. However, he said that he did not think it was fair that he be

required to pay Brenda the entire amount in one lump sum because, at the time Brenda paid the loan off, it was fifteen years from maturity. He said he would have no problem making an annual payment or monthly payments to Brenda.

Following the hearing, the court entered a final order dated August 25, 2006, requiring Phillip to pay Brenda $8124.04 within sixty days; declaring that the division of the 192 acres in the divorce decree was in error and that, due to an "error in the survey," Phillip should deed Brenda .9 acres "running across the top" of her property; and awarding Brenda $4023.78 in fees and costs. Phillip filed a timely notice of appeal.

### Jurisdiction to Modify the 2005 Decree

Phillip contends that neither Ark. R. Civ. P. 60 nor the trial court's reservation of jurisdiction in the April 2005 decree empowered the court to modify the decree in its August 2006 order. We agree for the following reasons.

### Ark. R. Civ. P. 60

Arkansas Rule of Civil Procedure 60 governs the circumstances in which a trial court may grant relief from a decree already entered. Rule 60(a) allows a trial court to modify or vacate a judgment for certain stated purposes within ninety days of its having been entered. Clearly, that subsection does not apply here as the August 2006 order was entered more than ninety days after the April 2005 decree. Rule 60(c) allows a court to vacate or modify a decree after the expiration of ninety days for one of several enumerated reasons, such as newly-discovered evidence, fraud, or misprisions of the clerk. See New Holland Credit Co. v. Hill, 362 Ark. 329, 208 S.W.3d 191 (2005). That subsection is also inapplicable. The trial judge did not rely upon it, and it has not been argued that any of the enumerated reasons are material to this case.

The only possible basis for the trial court's jurisdiction under Rule 60 is contained in subsection (b), which permits a trial court, at any time, to "correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission." The trial court seemed to rely on this subsection, based on its reference in the amended order to "errors" in the divorce decree and the survey.

However, the amended order did not correct any "errors" of the type contemplated by Rule 60(b). The 2005 decree con-

tained no clerical mistake, such as an inaccurate mathematical calculation or misidentification of a party by the court. *See Holt Bonding Co. v. State*, 353 Ark. 136, 114 S.W.3d 179 (2003); *Lord v. Mazzanti*, 339 Ark. 25, 2 S.W.3d 76 (1999); *Luckes v. Luckes*, 262 Ark. 770, 561 S.W.2d 300 (1978). Nor was there an oversight or omission in the 2005 decree, in the sense that the trial court inadvertently failed to set out a matter it originally intended to include. *See Ford v. Ford*, 30 Ark. App. 147, 783 S.W.2d 879 (1990).

Further, the amended order did not merely clarify or interpret the 2005 decree. *See Abbott v. Abbott*, 79 Ark. App. 413, 90 S.W.3d 10 (2002); *Ford, supra* (recognizing that a trial court retains the power to clarify or interpret a prior decree for more than ninety days in order to more accurately reflect the court's original intention). Rather, the court went beyond these parameters and supplemented the prior decree by deciding issues that were not previously before it, and which the parties had never agreed upon: the consequences of one party selling a portion of his or her land; the acceleration of Phillip's mortgage payment; and the particular manner of dividing the 192 acres. Essentially, the court tried to reform or rewrite the parties' independent property-settlement and mediation agreements, which were incorporated in the prior decree, to include these new features. However, no grounds for reformation, such as fraud or mutual mistake, were asserted here, and there is no evidence that any existed. *See Wyatt v. Ark. Game & Fish Comm'n*, 360 Ark. 507, 202 S.W.2d 513 (2005) (holding that an instrument cannot be reformed in the absence of a mutual mistake or a mistake on one side accompanied by fraud and inequitable conduct on the other).

We have stated on several occasions that Rule 60(b) should be used only to make the record speak the truth, not to make it speak what it did not speak but ought to have spoken. *See Taylor v. Zanone Props.*, 342 Ark. 465, 30 S.W.3d 74 (2000); *Shipp v. Shipp*, 94 Ark. App. 351, 230 S.W.3d 305 (2006); *see also generally First Nat'l Bank of Lewisville v. Mayberry*, 368 Ark. 243, 244 S.W.3d 676 (2006). Rule 60 should not be used to make additions to a decree involving matters that were not addressed in the original order. *See generally Holt v. Holt*, 70 Ark. App. 43, 14 S.W.3d 887 (2000); *Harrison v. Bradford*, 9 Ark. App. 156, 655 S.W.2d 466 (1983). That is what occurred here. We therefore conclude that the trial court abused its discretion in exercising jurisdiction pursuant to Rule 60. *See New Holland Credit Co., supra* (applying

abuse-of-discretion standard when reviewing a trial court's grant of relief under Rule 60).

### Reservation of Jurisdiction

■ Nor did the trial court's reservation of jurisdiction in the 2005 decree clothe it with the power to enter the amended order. We have held that a general reservation of jurisdiction may permit modification of a decree after ninety days. *Jones v. Jones*, 26 Ark. App. 1, 759 S.W.2d 42 (1988). However, this precept cannot and should not be used to evade the jurisdictional mandates of Rule 60. Thus, even where jurisdiction has been reserved, there can be no modification of a decree more than ninety days after its entry with respect to issues that were not before the trial court in the original action. *See id.* As we previously observed in this opinion, the possibility that Phillip's mortgage payments could be accelerated or that one party might wish to sell a portion of his or her land was not addressed by the court or the parties earlier in the case. Further, the parties never agreed upon nor, it appears, ever discussed, the details of dividing the 192 acres. These matters, then, were not issues to be revisited under a reservation of jurisdiction. Instead, they were matters that the trial court visited for the first time more than ninety days after entry of the prior decree. *See Tyer v. Tyer*, 56 Ark. App. 1, 937 S.W.2d 667 (1997).

■ In addressing this point, we feel compelled to distinguish our recent holding in *Carver v. Carver*, 93 Ark. App. 129, 217 S.W.3d 185 (2005). There, we held that the trial court's general reservation of jurisdiction in a divorce decree permitted it to enter an amended order more than ninety days later in which the court divided a retirement account that it had neglected to divide in the original decree. Our ruling was based, in part, on the notion that the trial court had jurisdiction to divide the account because the general issue of property division was before the court in the original action. However, this aspect of *Carver* should not be read too broadly. Two factors figured into our decision in *Carver* that are not present here. First, it was undisputed in *Carver* that the parties had agreed upon the division of the retirement account, even though the account was not addressed in the decree. By contrast, there is no evidence here that Phillip and Brenda agreed on any matters regarding acceleration of the mortgage debt or the details of dividing the 192 acres. Additionally, the trial judge in *Carver* entered a subsequent order less than ninety days after the

original decree was filed in which he expressly retained jurisdiction over the issue of dividing the retirement account. No such order was entered here.

Based on the foregoing analysis, we hold that the trial court was without jurisdiction to enter the 2006 amended decree. We therefore reverse and remand with directions to reinstate the April 2005 decree. As a practical matter, we point out that reinstatement of that decree does not leave Brenda without recourse. She may recover from Phillip for her payment of the mortgage debt as envisioned in the parties' agreements, albeit not in an accelerated fashion that those agreements do not contemplate. And, if she remains without access to a public road, she may, as Phillip's adjoining landowner, seek an easement over his land in a more appropriate forum.[2]

### Award of Attorney Fees

■ Because we reverse and remand to allow reinstatement of the 2005 decree, we also reverse the court's award of costs and fees to Brenda. We note that the parties' Memorandum of Understanding, entered after mediation and incorporated in the 2005 decree, provided that each party would bear his or her own attorney's fees and related costs.

Reversed and remanded.

GLADWIN and VAUGHT, JJ., agree.

---

[2] Brenda also argues that the involvement of mediation justified the court's continuing exercise of jurisdiction. However, we do not believe that she has developed this point sufficiently to convince this court. We see nothing in the mediation statute, Ark. Code Ann. § 16-7-202 (Supp. 2003) to suggest that it gives a court continuing jurisdiction over all potential aspects of a case more than ninety days after entry of a final decree.