2010 Ark. App. 343
**Connie S. YORK, Appellant**

v.

**James A. YORK, Jr., Appellee.**

**No. CA 09–1145.**

Court of Appeals of Arkansas.

April 21, 2010.

James Steven Dunham, Dunham & Faught, P.A., Russellville, for appellant.

Mark Jefferson Mobley, Mobley Law Firm, P.A., Russellville, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Connie S. York and appellee James A. York, Jr., were married on July 5, 1980, and were divorced by a decree entered on January 24, 2007. Subsequent to the divorce, each party filed various contempt motions against the other party alleging noncompliance with certain provisions of the divorce decree. Relevant to this appeal, a controversy arose between the parties regarding the meaning and effect of the divorce decree. In particular, there were competing motions as to the ownership of a business called York Bulldozing, Incorporated, and the parcel of real property where it is located at 10227 White Lane in Belleville. This business was incorporated by the parties during their marriage, and prior to the divorce Mrs. York owned 51 percent of the shares,

while Mr. York owned 49 percent of the shares.

On May 8, 2008, Mr. York filed a petition for declaratory judgment and specific performance. In the motion, he alleged that pursuant to the parties' property settlement agreement, upon their divorce he was awarded the business and the real property where it is located. Mr. York asked that Mrs. York be ordered to quitclaim her interest in the business located at 10227 White Lane. In her response, Mrs. York maintained that the business and real property were jointly owned by the parties, and she requested a hearing to resolve the dispute. Mrs. York took the position that there was never any agreement between the parties as to the disposition of the business, and that the divorce decree did not award the business to Mr. York as he claimed.

On January 30, 2009, the trial court entered a letter opinion stating that although Mr. York's petition was styled a petition for declaratory judgment, it was more in the nature of a summary judgment. Upon reviewing the pleadings, affidavits, and the transcript of the November 20, 2006, hearing in contemplation of the parties' divorce, the trial court found that there was no substantial issue of material fact pertaining to the bulldozing business and that Mr. York was the sole owner of the business. The trial court set an evidentiary hearing for consideration of the issue of the real property, and after the hearing the trial court entered an order on June 24, 2009, which incorporated its prior letter opinion. In its June 24, 2009, order, the trial court awarded Mr. York all of the real property pursuant to the divorce decree, which included the parcel of land where York Bulldozing is located at 10227 White Lane.

Mrs. York now appeals from the June 24, 2009, order and the incorporated letter opinion. Mrs. York argues that the trial court erred by granting summary judgment to Mr. York on the issue of ownership of the corporate shares of the business. She further asserts that the trial court erred in determining that she transferred to Mr. York her ownership of 51 percent of the York Bulldozing shares by operation of the divorce decree. Finally, Mrs. York contends that the trial court erred in finding that she was not the owner of a one-half undivided interest in the real estate known as 10227 White Lane. We agree that the trial court erred in granting summary judgment on the issue of the corporate shares, and we reverse and remand for a trial on that issue. We affirm the trial court's finding that the divorce decree awarded all of the real property to Mr. York.

The decree of divorce entered on January 24, 2007, was signed by both parties and provided in pertinent part:

(8). That the Plaintiff [Mr. York] shall pay to the Defendant [Mrs. York] $5,000.00 per year beginning July 1, 2007 for six (6) consecutive years for the equity in the real property for a total payment of $30,000.00.

(9). The Plaintiff shall receive the marital property known as 10199 White Lane, Belleville, Arkansas 72824 and shall be responsible for the debt thereon and shall hold the Defendant harmless from same. The Defendant shall execute a Quitclaim Deed to Plaintiff. That the Plaintiff shall claim the mortgage interest deduction for income purposes.

(10). The Plaintiff shall keep all debt associated with York Bulldozing, Inc.

. . . .

(15). The Plaintiff shall keep all of the business equipment currently in his possession and be responsible for any debt on said equipment and shall hold the Defendant harmless from same.

. . . .

(21). That each party shall maintain and keep his or her own personal property, their IRAs, retirement, 401k, accounts exclusive of any claim from the other and agree to execute any documents necessary to release his or her interest in the other party's account.

Although the parties did not have a written property settlement agreement, they testified as to the terms of their agreement at the November 20, 2006, hearing. At the conclusion of the hearing, the trial court stated that it approved the parties' property settlement agreement. During that hearing, Mrs. York testified that she and her husband had reached a settlement agreement disposing of all of their property and debts. Mrs. York stated that Mr. York agreed to pay her $5000 per year for six years for her part of the equity in the real property, and that he was going to receive the marital property at 10199 White Lane. Mrs. York further testified that Mr. York was going to keep all debts associated with York Bulldozing, and that he was to keep all equipment associated with the business and be responsible for any debt on it. Mrs. York indicated that she thought she had been treated fairly in the property settlement agreement, and she asked the trial court to approve it. In Mr. York's testimony, he stated that he listened to his wife's testimony about the property settlement agreement and was satisfied with his agreement with her.

After the present controversy arose, a hearing was held on May 15, 2009, to determine the effect of the divorce decree with regard to the real property where the bulldozing business is located. Mr. York explained that the parties acquired two tracts of property during their marriage that had the same address, which was 10199 White Lane. In 1994 they were deeded 1.12 acres where they built the marital home. In 2005, they purchased an adjacent tract of land consisting of 0.35 acres where a shop was built and they operated York Bulldozing. Mr. York indicated that 10199 White Lane was the address for all of this property when their property settlement agreement was approved by the trial court at the November 20, 2006, hearing. However, the address for the business was subsequently changed to 10227 White Lane. Charles Smith, the Yell County Emergency and 911 Director, swore out an affidavit stating that he was contacted by phone to establish a separate address for York Bulldozing, and that this was done on December 7, 2006. Mr. Smith could not recall who made the request.

Mr. York testified that he did receive from Mrs. York a quitclaim deed to the property where the house sits, but not to the property where the business is located. He maintained that under their agreement he was to receive all of the real property listed under the address of 10199 White Lane, which at that time included York Bulldozing. Mr. York stated that their agreement provided that he was to receive the business.

Randall Morris is employed with Entergy, and he testified that the utility account for 10199 White Lane was established in May 2002. He further testified that a separate account was created for 10227 White Lane on June 30, 2006, and that there were two different meters. However, an invoice from Entergy to York Bulldozing mailed on December 12, 2008, showed the service location as 10199 White Lane. It was not until the following month that the Entergy invoice showed the address for York Bulldozing as 10227 White Lane.

Mrs. York testified that when they entered into the property settlement agreement prior to their divorce, she only agreed to give Mr. York the property

where the marital home is located. She said that the $30,000 to be paid by Mr. York represented her equity in the home. Mrs. York indicated that the parties never came to any agreement about how to dispose of the real property where the business sits, and she was under the impression that she still owned this property as tenants in common with Mr. York after the divorce.

On cross-examination, Mrs. York acknowledged that since the divorce she has not paid property taxes on the property in which she claims an interest, and she assumed that Mr. York was paying the taxes. Mrs. York further testified that Mr. York has had the use of the business property since their divorce, and that she has not paid any of the utilities to the property. Mrs. York acknowledged that she was the one who contacted Entergy and requested a new address for the business property.

Mrs. York's first argument on appeal is that the trial court erred by granting summary judgment to Mr. York on the issue of the corporate shares of the bulldozing business. She contends that summary judgment was inappropriate because Ark. R. Civ. P. 56 specifically requires a motion for summary judgment as a prerequisite for considering or granting that relief. Mrs. York also complains that she was not put on adequate notice before the trial court granted summary judgment.

■ We hold that the trial court did not err procedurally in granting summary judgment on the issue of the corporate shares of the business. It is true that Mr. York did not file a motion for summary judgment. However, such a motion is not always required. *E.g., B.G. Coney Co. v. Radford Petroleum Equip. Co.,* 287 Ark. 108, 111–12, 696 S.W.2d 745, 748 (1985); *compare 2200 Commercial Street Warehousing, LLC v. Hastings Dev. Co., Inc.,*

98 Ark.App. 316, 318–19, 255 S.W.3d 488, 489–90 (2007). The dispositive inquiry is whether the circumstances put the parties on notice that the court was considering entry of summary judgment and gave the parties the opportunity to object and make a record on whether genuine issues of material fact existed. *B.G. Coney, supra.* Rule of Civil Procedure 12(c) illustrates how a case can move to the summary-judgment stage without a party specifically moving for that relief. Rule 12(c) provides:

*Motion for Judgment on the Pleadings.* After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

On December 2, 2008, the trial court entered an order directing Mr. York to file a brief that detailed his position concerning ownership of the business stock in question, and Mrs. York was given ten days to file a responsive brief. The order notified the parties that "the Court will then make a decision concerning the issues, and make a ruling as to whether testimony is required or a hearing to be scheduled." Mr. York filed his brief in support of his petition for declaratory judgment on the same day the above order was filed. He attached five exhibits, including the transcript of the divorce hearing, bank documents, Entergy bills, and a letter from the Yell County 911 Office of Emergency Management. Mr. York said that he was seeking a declaration of law,

not summary judgment. Mrs. York filed her response on December 18, 2008. She argued that there were numerous facts in dispute, which required an evidentiary hearing. She supported her argument with seven exhibits: deeds, tax returns, and affidavits. Mr. York replied to that response on the following day. About six weeks later, the trial court treated Mr. York's petition as a motion for summary judgment and ruled that the business was his sole property as a matter of law. The court also ruled that a trial was needed on the real-property issues.

The trial court's order directing the parties to file briefs made it evident that the trial court would be deciding whether there were any issues of fact that would require an evidentiary hearing to be scheduled. In Mr. York's brief he requested a finding regarding the legal standing of the parties, which he asserted was a declaration of law, not facts. In Mrs. York's response, she demonstrated her knowledge that summary judgment was at that time being contemplated. In this regard, she argued that there were facts still in dispute and that she was entitled to a hearing to resolve the disputed facts. In his reply to her response, Mr. York argued that "this Court has the authority and jurisdiction is proper for the Court to enter such a Declaratory Judgement and no hearing or trial is required or necessary as said judgment would be a finding of law, not a finding of fact."

Summary judgment should be granted when there are no issues of genuine fact and a party is entitled to judgment as a matter of law. Ark. R. Civ. P. 56(c)(2). Mr. York sought judgment as a matter of law on the pleadings. He and Mrs. York, however, expanded the record beyond the pleadings by filing numerous exhibits, including affidavits. The circuit court notified both parties that it was considering whether to rule as a matter of law or needed to hold an evidentiary hearing. The court's consideration of evidentiary materials beyond the pleadings converted what was essentially a Rule 12(c) request for relief into a summary-judgment situation. Because the circuit court notified the parties of its intentions, and both parties responded by submitting evidentiary materials along with their legal arguments, the circuit court did not err as a matter of procedure in considering whether the stock and real-property issues were ripe for summary judgment. B.G. Coney, 287 Ark. at 111–12, 696 S.W.2d at 748.

Mrs. York's next argument is that the trial court erred in determining that she transferred her ownership of 51 percent of the shares of York Bulldozing by operation of the divorce decree, thus making Mr. York the sole owner of the business. Relying on Linn v. Miller, 99 Ark. App. 407, 261 S.W.3d 471 (2007), she asserts that the trial court lacked subject-matter jurisdiction to adjudicate an issue pertaining to marital property rights that was not raised when the divorce decree was entered. Even if a trial court purports to be clarifying or interpreting a prior decree of divorce, if the actual effect is to reform or rewrite the parties' independent agreement, the appellate court will look to the actual effect of the trial court's action and determine whether jurisdiction exists. See Linn, supra. In the present case, Mrs. York asserts that the trial court sought to invoke jurisdiction to act by purporting to interpret the divorce decree in a manner proscribed by our holding in Linn, supra. She notes that the divorce decree does not mention the shares of stock of York Bulldozing, and submits that it contains no language divesting her of her shares. Because the trial court lacked jurisdiction to determine ownership of the business, Mrs. York ar-

gues that its decision in this regard must be reversed.

Mrs. York further asserts that, even if we determine that the trial court had jurisdiction, the trial court clearly erred in finding that she transferred her interest in the business. She maintains that the divorce decree contained no language effectuating any transfer of stock, and that she was entitled to the benefit of her bargain with Mr. York, which consisted of their property settlement agreement that did not involve the business. For these reasons, she asks that the case be remanded and the trial court ordered to confirm her continued ownership of 51 percent of the shares of York Bulldozing.

Rule 60 of the Arkansas Rules of Civil Procedure governs circumstances in which a trial court may grant relief from a decree already entered, and Rule 60(a) allows a trial court to modify a judgment for certain purposes within ninety days. Rule 60(c) allows a trial court to modify a decree after the expiration of ninety days for one of several enumerated reasons. However, we hold that the provisions of Rule 60 do not govern in this case because the order being appealed from did not modify the divorce decree, it interpreted the decree and enforced it.

■ In *Ford v. Ford*, 30 Ark.App. 147, 783 S.W.2d 879 (1990), we recognized that a trial court retains the power to clarify or interpret a prior decree for more than ninety days in order to more accurately reflect the court's original intention. When the divorce decree is ambiguous, the trial court has jurisdiction to make changes that clarify what the court originally intended. *Abbott v. Abbott*, 79 Ark. App. 413, 90 S.W.3d 10 (2002). In the present case, the trial court was vested with jurisdiction to interpret and enforce its decree, which was entered pursuant to the parties' property settlement agreement.

■ Mrs. York argues that even if the trial court had jurisdiction, as we now hold, its decision to award all of the interest in the business to Mr. York was clearly erroneous. However, because this issue was decided on summary judgment the clearly erroneous standard of review is not applicable. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Ganey v. Kawasaki Motors Corp., U.S.A.*, 366 Ark. 238, 234 S.W.3d 838 (2006). Because there were genuine issues of material fact to be litigated with respect to the parties' property settlement agreement as pertains to the corporate shares, we agree that summary judgment was not an appropriate disposition on this issue.

It is true, as the trial court noted, that the divorce decree awarded Mr. York the business equipment and provided that he keep all debt associated with the business. However, the divorce decree did not specifically address the corporate shares, and it contained a provision that each party shall keep his or her personal property. Prior to its ruling on the issue, the trial court was presented with Mrs. York's affidavit, wherein she swore under oath:

> Prior to, during and after our divorce, James and I had several heated discussions about the bulldozing business that we had established and are co-owners of, and which I am still President and the majority shareholder of. Because we could not reach an agreement about the business without extreme confrontations at that time, I made it very clear to him that I was not giving up my interests in our business and that we would address those issues when we could discuss and decide on them rationally.

Mrs. York's mother swore out an affidavit stating that it was never Mrs. York's intent to relinquish her rights and interests in the business at the time of her divorce. We doubt the evidentiary value of the mother's affidavit because it recites that her personal knowledge of the disputed issue was based on what Mrs. York had told her. *Swindle v. Lumbermens Mut. Cas. Co.,* 315 Ark. 415, 421, 869 S.W.2d 681, 684 (1993). While it was the trial court's duty to interpret the parties' property settlement agreement as reflected in the divorce decree regarding ownership of the business shares, the decree, the hearing transcript, Mrs. York's affidavit, and other materials demonstrate that there were material issues of disputed fact regarding the parties' agreement. Therefore, summary judgment was improper and we remand for a trial to be held on that issue.

Mrs. York's remaining argument is that the trial court erred in finding that she was not a one-half owner of the real estate known as 10227 White Lane, where the bulldozing business is located. This factual determination was made by the trial court after a trial on the issue, and such findings of fact are not reversed unless clearly erroneous. *See Alphin v. Alphin,* 364 Ark. 332, 219 S.W.3d 160 (2005). A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002).

Under her final point, Mrs. York again challenges the trial court's subject-matter jurisdiction on the basis that only the marital property known as 10199 White Lane was divided upon divorce, and that any disposition of the property at 10227 was an unauthorized modification of the decree. Mrs. York further argues that even if the trial court had jurisdiction its award of the

property to Mr. York was clearly erroneous. She notes that there were two separate deeds for the property where the marital home is located and the business property, and submits that their agreement and the divorce decree only pertained to the marital-home property at 10199 White Lane. Mrs. York contends that she never divested her interest in the business property at 10227 White Lane, and that the trial court clearly erred in so finding.

We hold that the trial court had jurisdiction to decide ownership of the business property for the same reasons we outlined in the previous point. Contrary to appellant's contention, the trial court was again interpreting and clarifying its prior divorce decree, as opposed to modifying it. We also hold that the trial court did not clearly err in awarding all of the real property to Mr. York, including that located at 10227 White Lane, pursuant to the terms of the divorce decree. Paragraph eight of the divorce decree provided that Mr. York shall pay Mrs. York a total of $30,000 for the equity in the real property, without limiting the extent of real property being awarded to Mr. York. It is true, as Mrs. York asserts, that the decree specifically provided that Mr. York shall receive the marital property known as 10199 White Lane, and there was no reference in the decree to 10227 White Lane. However, there was evidence demonstrating that at the time the parties entered into the property settlement agreement, both tracts of real property were known as 10199 White Lane. While there was an address change of the business to 10227 White Lane, the trial court concluded that all of the marital real property was contemplated in the parties' agreement and awarded to Mr. York pursuant to the decree. Under the circumstances of this case, we are not left with a definite and firm conviction that this interpretation of the decree was a mistake.

Affirmed in part; reversed and remanded in part for further proceedings consistent with this opinion.

KINARD and MARSHALL, JJ., agree.