KENNETH S. HIXSON, Judge
This is a postdivorce dispute. Appellant John Treloggen and appellee Stephanie Treloggen were married in 1991 and were divorced pursuant to a divorce decree entered on July 16, 2012. The divorce decree contained provisions for child support, alimony, and division of the parties' property. Relevant to this appeal, the divorce decree provided that Stephanie was entitled to her marital percentage of John's post-office retirement based on the date of their marriage through the date of the decree. On January 31, 2014, the trial court entered a Court Order Acceptable for Processing under the Civil Service Retirement System (COAP). The COAP provided in pertinent part, "The Former Spouse [Stephanie] is entitled to a 32.28% pro rata share of the Employee's [John's] gross monthly annuity under the CSRS [Civil Service Retirement System]."
Beginning in November 2014, both parties filed motions to either modify or correct the COAP in different respects. After two hearings, the trial court entered two orders on October 30, 2017. The effect of these orders was to modify the COAP in the manner requested by Stephanie, and to deny the proposed modification requested by John. John now appeals, arguing that the trial court erred in modifying the COAP upon Stephanie's request, while refusing to amend the decree upon his request. John also argues that the trial court erroneously calculated the post-office retirement arrearages he owed to Stephanie. We affirm.
*518 The COAP was entered into on January 31, 2014. Shortly thereafter, Stephanie began receiving benefits from the COAP in an amount considerably less than she was anticipating under the agreement. The postdivorce proceedings were initiated by Stephanie on November 20, 2014, when she filed a motion for contempt and modification. In that motion, Stephanie complained, inter alia,[1] that while the COAP awarded her 32.28% of John's civil-service retirement, she was receiving only 14.84%, and Stephanie requested that the court order John to bring said amount current. On April 22, 2015, John filed a motion to correct a clerical error. In his motion, John alleged that the COAP contained a clerical error because it awarded Stephanie a percentage of his gross monthly retirement benefits, and the parties had agreed she was entitled to only a percentage of his net monthly retirement benefits. John asked that the COAP be corrected to reflect that Stephanie was to receive a net share rather than a gross share.
The trial court held a hearing on September 30, 2015. At the hearing, John testified that the parties' agreement was for Stephanie to receive a percentage of his net monthly annuity and that the provision in the COAP that she receive a percentage of his gross monthly annuity was an inadvertent error. John did, however, acknowledge that his gross monthly annuity payment of $7,425 was being reduced by a plethora of deductions totaling $6,270, leaving only $1,155 as his net annuity payments. Many of these deductions are personal deductions and include, but are not limited to, his health-insurance premiums, his life-insurance premiums, family-insurance premiums, and his $2000 mortgage payment. Therefore, the net monthly annuity payment that John contended was available for apportionment under the COAP was substantially less than the gross monthly annuity payment.
In Stephanie's testimony, she disputed John's claim that they had agreed she would receive a percentage of only his net monthly retirement earnings. Stephanie stated that, after extensive negotiations, the parties specifically agreed that she would instead receive a percentage of the gross monthly benefit.
At the conclusion of the hearing, the trial court indicated, inter alia, that it would not rewrite the COAP on the issue of gross versus net because the parties had agreed that Stephanie would receive a portion of the gross annuity.[2] However, no order was entered at that time.
About five months later, on March 4, 2016, Stephanie filed her own motion to correct clerical error. Apparently, Stephanie discovered that the United States Office of Personnel Management (OPM), the federal agency that administers the Post Office retirement payments, had interpreted the COAP language "32.28% pro rata share" to mean that Stephanie was only entitled to 32.28% of 32.28%, thus reducing her actual benefit to 14.84%.[3] In her motion, Stephanie alleged that the language *519 in the COAP that she receive a 32.28% pro rata share of John's gross monthly annuity did not accurately reflect the parties' agreement and was apparently a clerical mistake. Stephanie alleged that she was supposed to receive a 32.28% share of the gross monthly annuity, and that by including the additional quantifying term "pro rata," her monthly share was being reduced twice contrary to the parties' agreement. In effect, Stephanie alleged that, instead of receiving a percentage of the gross monthly benefit, she was receiving a percentage of a percentage. Stephanie asked that the COAP be amended by deleting the words "pro rata" so that it reads, "[t]he Former Spouse is entitled to a 32.28% [pro rata] share of the employee's gross monthly annuity under the CSRS." Stephanie asserted that such an amendment was authorized by Arkansas Rule of Civil Procedure 60 as well as Paragraph 10 of the COAP, which provided, "Continued Jurisdiction: The Court shall retain jurisdiction with respect to this order to the extent required to maintain its status as a COAP and the original intent of the parties as stipulated herein."
A hearing on Stephanie's motion was held on July 13, 2016. No testimony was taken at that hearing. However, at the previous hearing, both parties had testified concerning the "pro rata" language in the COAP. John had testified that he never agreed that the "pro rata" language should not be in the COAP; that the COAP was drafted by Stephanie's counsel; and that he was asking that the "pro rata" language remain. Stephanie testified that the term "pro rata" should not have been included in the COAP because, instead of receiving 32.28% of John's retirement benefit, she was getting only 14.84% as a result of receiving a percentage of a percentage.
During the hearing held on July 13, 2016, John's counsel acknowledged that "the 32.28% we agree is the percentage of retirement in terms of their marriage." John's counsel further stated that "there is an assumption that the pro rata is an error" and that "I don't know if that is an error or not."
On October 30, 2017, the trial court entered an order making the following findings:
1. THAT the percentage figure of [John's] annuity that [Stephanie] is entitled to, which is currently stated in Paragraph 4 of the January 31, 2014, Court Order Acceptable for Processing Under the Civil Service Retirement System , (herein referred to as "COAP"), is 32.28%. This percentage shall not be further reduced in its implementation by the United States Office of Personnel Management (OPM) by any calculation relating to the length of employment versus the length of his marriage to [Stephanie], i.e., the "pro rata share" language of the January 31, 2014, COAP shall have no application.
2. THAT the parties hereto are directed to contact OPM and seek an exact detailed itemized breakdown of what monies, if any, that should be deducted from the annuity amount [John] receives per month before [Stephanie] receives her "gross" monthly share. This breakdown should be in accordance with the applicable federal guidelines for OPM, per their regulations and procedures. Further, that in no event should [John] be responsible for payment of any taxes, federal or state, for the monies [Stephanie] receives monthly per the COAP and no such deductions shall be made from the monthly portion allocated to [Stephanie].
*520 Also on October 30, 2017, the trial court entered a separate order finding that John owed Stephanie $84,073.80 in arrearages based upon his postal retirement. John appeals from both of these orders.
Discussion
Stephanie's claim for relief below alleged that the insertion of the term "pro rata" in the COAP constituted a clerical error and that the trial court had jurisdiction to correct the error under Arkansas Rule of Civil Procedure 60(b) or pursuant to paragraph 10 of the COAP. John's first argument on appeal is that the term "pro rata" was not a clerical error and that trial court erred in modifying the COAP by striking the term "pro rata" from the COAP because the trial court did not have the authority to modify the COAP after the expiration of ninety days pursuant to Arkansas Rule of Civil Procedure 60.
First, we analyze whether the trial court had jurisdiction to correct the alleged clerical error under Arkansas Rule of Civil Procedure 60, which provides in pertinent part:
(a) Ninety-Day Limitation. To correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment, order or decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk.
(b) Exception; Clerical Errors. Notwithstanding subdivision (a) of this rule, the court may at any time, with prior notice to all parties, correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
(Emphasis added.) Here, it is undisputed that the trial court's October 30, 2017 orders which modified the COAP were filed more than ninety days after the COAP was entered. Hence, the modification of the COAP's terms was not authorized under Rule 60(a). John argues that Rule 60(b) did not authorize any modification in the COAP because the inclusion of the term "pro rata" was not a "clerical error" within the meaning of the rule. John further argues that Rule 60 does not apply because the error was made by Stephanie's counsel, who prepared the COAP. In First National Bank of Lewisville v. Mayberry , 368 Ark. 243, 244 S.W.3d 676 (2006), the supreme court held that although Rule 60 may be used to correct clerical errors by court personnel, it may not be used to correct such errors by an attorney. Finally, John argues that if the trial court did have the authority to amend the COAP to delete the "pro rata" language, it also had the authority to amend the COAP pursuant to John's motion to change the "gross monthly annuity" language to "net monthly annuity."
We agree with John's argument that the COAP could not be amended under Rule 60(b). It is undisputed that the COAP was prepared by Stephanie's counsel. Our supreme court has defined a true clerical error, one that may be corrected by a nunc pro tunc order under Rule 60, as essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else). Francis v. Protective Life Ins. Co. , 371 Ark. 285, 265 S.W.3d 117 (2007). However, our supreme court in First National Bank of Lewisville, supra , held that when the mistake complained of is clearly the attorney's fault, rather than being a clerical error *521 made by the court or court staff, the trial court cannot resort to Rule 60 to correct counsel's error. Here, the phrase "pro rata" was selected and inserted into the decree by Stephanie's attorney and hence, it is not a clerical error as contemplated by Rule 60(b). Therefore, Rule 60(b) cannot be the legal basis to provide the relief ordered by the trial court.
That, however, does not end our inquiry. This court has repeatedly held that a general reservation of jurisdiction in a decree will allow a trial court to modify a decree after ninety days with respect to issues that the trial court considered in the original action. Toney v. Burgess , 2018 Ark. App. 54, 541 S.W.3d 469 ; Linn v. Miller , 99 Ark. App. 407, 261 S.W.3d 471 (2007) ; Carver v. Carver , 93 Ark. App. 129, 217 S.W.3d 185 (2005) ; Jones v. Jones , 26 Ark. App. 1, 759 S.W.2d 42 (1988) ; Cox v. Cox , 17 Ark. App. 93, 705 S.W.2d 902 (1986) (supplemental opinion on denial of rehearing). In this case, the trial court reserved jurisdiction over the COAP. Paragraph 10 of the COAP provides in pertinent part: "The court shall retain jurisdiction with respect to this Order to the extent required to maintain its status as a COAP and the original intent of the parties as stipulated herein. Further, the court shall retain jurisdiction to enter any such further orders as necessary to enforce the award to the Former Spouse of the benefits awarded herein[.]" Because the trial court specifically considered Stephanie's entitlement to John's post-office retirement benefits in the COAP and because the court's order specifically empowered the court to retain jurisdiction over the COAP, we hold that the trial court retained jurisdiction to modify on that issue.
Having concluded that the trial court retained authority to modify the COAP, the remaining issues are whether the trial court erred in modifying the COAP to strike the term "pro rata," and whether it erred in not modifying the COAP to reflect that Stephanie's share of the annuity would be a percentage of the net monthly annuity instead of the gross monthly annuity. In domestic-relations cases, we will not reverse a trial court's finding of fact unless it is clearly erroneous. Hunter v. Haunert , 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the trial court has made a mistake. Id. In reviewing a trial court's findings of fact, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. Fletcher v. Stewart , 2015 Ark. App. 105, 456 S.W.3d 378.
On this record, we cannot conclude that the trial court clearly erred in striking the "pro rata" language in the COAP to accurately reflect the intent of the parties. The divorce decree provided that Stephanie was to receive her marital percentage of the post-office retirement. John's counsel agreed at the final hearing that 32.28% was the portion of the retirement due to Stephanie based on the duration of the parties' marriage. Stephanie indicated in her testimony that she was supposed to receive 32.28% of the retirement pay, and that she assumed that the "32.28% pro rata share" language in the COAP meant that she would receive 32.28%. However, the United States Office of Personnel Management mistakenly interpreted this language to mean that Stephanie would not receive 32.28%, but would instead receive a pro rata percentage of that percentage. By directing the OPM to disregard the "pro rata" language, the trial court modified the language in the COAP to reflect what it found was consistent with *522 the parties' agreement, i.e., that Stephanie would receive 32.28% of the retirement pay. On this record, we cannot say this was clearly erroneous.
Nor can we conclude that the trial court clearly erred in not modifying the COAP, as requested by John, to reflect that Stephanie's 32.28% share of the retirement benefits be taken from John's net monthly annuity instead of the gross monthly annuity. Although John testified that the parties agreed that Stephanie would be awarded only a percentage of the net monthly benefits, this assertion was contradicted by Stephanie, making this a credibility issue to be decided by the trial court. Moreover, in concluding that the parties had agreed that Stephanie would be paid a percentage of the gross monthly benefits, the trial court had before it John's concession that many of his personal expenses, including a $2000 mortgage payment and insurance premiums, were being paid out of the gross amount before the net amount was distributed. We are not left with a definite and firm conviction that the trial court made a mistake in denying John's motion to modify the COAP.
John's remaining argument is that the trial court erred in arriving at the amount of arrearages he owed to Stephanie based on his postal retirement pay. John argues that because the trial court erred in striking the "pro rata" language from the COAP, it used the wrong formula in deciding how much arrearages were owed. We disagree with this argument based on our holding herein that the trial court did not clearly err in striking the "pro rata" language to reflect the agreement of the parties. John also argues that the trial court erred in calculating the arrearages retroactively to the date the COAP was originally entered. We disagree with this argument as well. Per the parties' original agreement and as interpreted by the trial court, the "32.28% pro rata share" language in the COAP meant that Stephanie was supposed to receive a 32.28% share of John's gross monthly retirement. The fact that Stephanie was receiving a lesser amount than what was agreed to was the result of the OPM's misinterpretation of the provision. When the trial court granted Stephanie relief by directing the OPM to disregard the "pro rata" language, the court was not changing the terms of the original agreement; it was enforcing what the parties had originally agreed to-that Stephanie shall receive a 32.28% share in accordance with what she was entitled to based on the duration of her marriage to John. For this reason, we hold that the trial court properly calculated the arrearages retroactively.
Affirmed.
Abramson and Virden, JJ., agree.

There were several other alleged violations of the decree pertaining to the division of property that are not part of this appeal.

While the language "32.28% pro rata" was tangentially discussed at this hearing, the actual litigation of the interpretation of "32.28% pro rata" was the topic of a subsequent hearing held after Stephanie filed a motion to correct clerical error on March 4, 2016.

We acknowledge that 32.28% of 32.28% does not amount to 14.84%. However, the record does not reflect precisely how the 14.84% was calculated and, further, that calculation is not relevant to the disposition of this appeal.