2012 Ark. App. 458

**Albert Thomas STUART, Appellant**

v.

**Lilly Alline STUART, Appellee.**

**No. CA 12–149.**

Court of Appeals of Arkansas.

Sept. 5, 2012.

---

James A. McLarty, III, Newport, for appellant.

Samantha B. Leflar, Legal Aid of Arkansas, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Albert Stuart appeals from a divorce decree filed on August 5, 2011, which awarded permanent alimony to appellee Lilly Stuart and from the February 6, 2012 substitution order that clarified the award of alimony. Appellant argues that the trial court should reverse the award of alimony in the divorce decree and in the subsequent order that modified it. Appellant also contends that the trial court erred in modifying the initial divorce decree beyond the expiration of ninety days from entry. We affirm.

On May 24, 2011, appellant filed his complaint for divorce, and appellee subsequently filed an answer and counterclaim for divorce and spousal support. Testimony at trial showed that, at the time of the hearing, appellee received social-security income of $642 per month and was not working, although she presented no evidence showing that she was incapable of employment. Appellee stated that the reason she was entitled to spousal support was that she had "put up with him" for eighteen years. Appellee also testified that she had located a place to rent in Grubbs, Arkansas, for $325, including utilities. She acknowledged that she was aware of the availability subsidized-governmental housing in Newport, Arkansas, approximately twenty-five miles away, that would cost her "practically nothing." Appellee explained that she did not consider that option because her preference was to live in Grubbs, where her children live, although she did admit that she also has one grandchild who lives in Newport.

Appellant explained that he was "100-percent disabled," according to the Veteran's Administration (VA), with a back problem that keeps him from working. Appellant receives $1670 per month in social-security income and $770 each month from a pension. Appellant testified to monthly payments in the sums of $226 for the house, $134 for its central heating/cooling system, $134 for life insurance, and $100 per month for a tool shed.

The trial court ordered an equal division of property, and the original divorce decree entered on August 5, 2011, states in pertinent part:

Based upon the term of the marriage and the disparity in income the Court awards Lilly alimony in the amount of $440.00 per month which shall be paid through the registry of the Court.

Appellant filed a notice of appeal of the decree on August 30, 2011. The second order entered on February 6, 2012, states that the purpose of its entry was to settle the uncertainty and clarify the ruling with respect to paragraph four of the August 5, 2011 Decree of Divorce relative to the payment of alimony. The second order sets general time limits and directs the Social Security Administration to make the withholding from appellant's social security payments. Appellant filed a supplemental and amended notice of appeal from both orders on February 8, 2012.

I. *Award of Alimony in Divorce Decree and in Later Modification*

A. Standard of Review

■ The decision to grant alimony lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). A trial court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Delgado v. Delgado*, 2012 Ark. App. 100, at 6, 389 S.W.3d 52, 57.

B. Case Law and Statutory Provisions

In *Davis v. Davis*, 79 Ark. App. 178, 185–86, 84 S.W.3d 447, 451 (2002), this court noted the pertinent factors in a determination to award alimony:

Alimony and property divisions are complementary devices that a chancellor employs to make the dissolution of a marriage as equitable as possible. . . . The purpose of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; and (4) the earning ability and capacity of both parties. [T]his court explained that the amount of alimony should not be reduced to a mathematical formula and that the need for flexibility outweighs the need for relative certainty. However, the court should consider the total income, from whatever source, including social security payments, of both parties in making the determination.

(Internal citations omitted.)

■ Alimony is not available under the common law, but rather is a creature of statute, and a discretionary one at that. *See Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). Because an alimony award is statutory, it must be strictly construed. In Arkansas Code Annotated section 9–12–312(a)(1) (Repl.2009), the statute demonstrates that any alimony must be awarded at the time of the divorce:

(a)(1) When a decree is entered, the court shall make orders concerning the alimony of the wife or the husband and the care of the children, if there are any, as are reasonable from the circumstances of the parties and the nature of the case.

. . . .

(b) In addition to any other remedies available, alimony may be awarded under proper circumstances to either party in fixed installments for a specified peri-

od of time subject to the contingencies of the death of either party, the remarriage of the receiving party, or such other contingencies as are set forth in the award, so that the payments qualify as periodic payments within the meaning of the Internal Revenue Code.

*Id.*

## C. Discussion

■ Appellant makes numerous arguments as to why the trial court's award of alimony should be reversed. Initially, he argues that the award is counter to precedent that specifically states that the purpose of alimony is not to punish the other spouse. Appellant claims that the only reason for alimony stated by appellee was to punish him, as she unequivocally testified:

I draw $642 in Social Security. He draws almost three times that amount by his estimates. I am asking the Court that he pay me some amount of spousal support to help me live. *I am entitled for putting up with what I did for 18 years.*

(Emphasis added.) He argues that this is insufficient justification to award any support. In *Barker v. Barker,* 66 Ark. App. 187, 992 S.W.2d 136 (1999), this court reversed an alimony award, unequivocally stating that ordinarily, fault or marital misconduct is not a factor in an award of alimony. *See McKay v. McKay,* 340 Ark. 171, 8 S.W.3d 525 (2000). Appellant contends that none of the other proper, factors cited in *Davis, supra,* were stated as reasons for support, and he claims that the trial court relied upon the impermissible criteria of punishment and entitlement, which are insufficient grounds in light of the facts in this case for a lifetime award of alimony.

We disagree. Despite appellee's testimony implying that she should receive alimony to punish appellant, nothing in the record indicates that the trial court awarded alimony to punish him. *See Kuchmas v. Kuchmas,* 368 Ark. 43, 243 S.W.3d 270 (2006) (upholding alimony award where nothing in the record indicated that the trial court relied on an improper factor in awarding alimony even though there was testimony related to the factor by the supported spouse). The trial court did not mention appellee's statement in its ruling, instead referring to other evidence in the record that was relevant to the proper economic factors. Contrary to appellant's assertion that the evidence did not support any ground for alimony other than punishment or entitlement, the trial court considered both parties' extensive testimony regarding their income, assets, work history, standard of living, and future ability to earn money.

■ Appellant next argues that the trial court's award failed to take into account that parties are expected to use their best efforts to rectify an economic imbalance. *Grady v. Grady,* 295 Ark. 94, 747 S.W.2d 77 (1988). Whether one party has available other resources—and whether he or she has utilized those resources—are proper considerations for the trial court—as are the efforts of the spouse. In this case, appellant asserts that he is disabled, and he reiterates the VA's conclusion that he is "100–percent disabled." He notes that appellee, on the other hand, presented no such evidence regarding her employment ability or efforts. In *Davis, supra,* this court noted that income from whatever source, including governmental benefits, may be considered regarding an alimony request:

[T]he court should consider the total income, from whatever source, including social security payments, of both parties in making the determination.

*Davis,* 79 Ark. App. at 186, 84 S.W.3d at 451. Also, in Administrative Order No. 10, the Arkansas Supreme Court recognizes

that availability of income "from whatever source" may be attributed to the dependent, which appellant suggests indicates that the supreme court expects parties—both the payor and the payee—to utilize all available resources.

Appellant notes that appellee testified that she would not consider moving even a short distance where she might obtain considerable preferences in her housing costs. Her testimony is as follows, as noted in the abstract:

> The place which I found for $325 a month is on Elm Street in Grubbs, which is owned by a private individual. I have not checked into a place in Newport where people with low income as I have can obtain. I probably would be eligible to get a place in Newport for practically nothing, but all my children are in Grubbs, and I would prefer to stay in Grubbs.

As to her only reason for not moving, the abstract indicates that she testified inconsistently:

> I have lived in Grubbs for 18 years. I do not wish to move to Newport. I have family [in] Grubbs but have a grandkid in Newport, but that is the only one.

Appellant contends that governmental benefits have been properly considered in relation to an alimony demand. *See Belue v. Belue,* 38 Ark. App. 81, 828 S.W.2d 855 (1992). Appellant argues that, in this case, appellee's efforts to utilize all available resources, or the lack thereof, are demonstrated by her decision to forego housing at admittedly virtually no cost to her.

We note that there is no authority for the proposition that a spouse must utilize public housing if she would qualify absent an award of alimony. Under Arkansas Code Annotated section 9–12–312(a)(1), the trial court should "make orders concerning the alimony of the wife or the husband . . . as are reasonable from the circumstances of the parties and the nature of the case."

Nothing in either the statute or applicable case law requires a spouse to attempt to obtain public housing before a trial court may award alimony. Additionally, the evidence presented to the trial court established neither that public housing was available to appellee nor that the "cash value" of the government benefit would have offset the disparity in income between the parties. Accordingly, we hold that the trial court did not abuse its discretion with respect to its findings on this issue.

■ Appellant also argues that the alimony award would devastate him financially, but the trial court's findings indicate that, even with the alimony award, appellant's monthly income is $2000 while appellee's is $1082. Absent the alimony award, appellant's income would be $2440 per month, and appellee's income would be $642 per month. We find no merit in appellant's contention that the alimony award is inequitable and places a significant burden on him. Appellant testified to a total monthly income of $2440. He also testified that he pays $226 per month for the parties' marital home, $134 per month for a heating and cooling system, $134 per month for life insurance, and $100 per month for a shed. The $440 monthly alimony payment constitutes only eighteen percent of appellant's monthly income. Considering appellee's long-term homemaker status, her advanced age of seventy-four, and the fact that, even with alimony, appellant's monthly income remains twice that of appellee, we hold that the trial court's decision is consistent with the analysis set forth in *Davis, supra; Delgado, supra.*

■ Finally, appellant argues that the trial court's award of alimony was unnecessary. Alimony must be based upon true needs of a party and the ability of the other party to pay. *Davis, supra.* He

maintains that appellee neither testified as to any monthly expenses nor introduced into evidence an Affidavit of Financial Means to justify any award of spousal support. Appellant argues that the $440 per month award was neither necessary nor supported by the evidence, which actually indicated appellant's inability to work and his limited available assets.

We disagree. The trial court's award of alimony reflected consideration of the four factors set forth in *Davis, supra*. The trial court considered the financial circumstances of both parties, the amount and nature of the current and anticipated income of both parties, and the extent and nature of the resources and assets of each of the parties. The trial court observed that while appellant's income was $2440 per month, appellee's income was $642 per month. In awarding appellee $440 per month in alimony, the trial court noted that the award did not equalize the income disparity between the parties, but equitably acknowledged a portion of appellant's work history, and corresponding income, occurred prior to the parties' marriage. The trial court also considered the relative earning ability and capacity of each party, finding that, because of the age of the parties, neither of them would be likely or able to obtain work outside the home. The trial court also acknowledged that appellee did not work outside the home during the parties' nineteen-year marriage.

■ The appropriateness of an alimony award is determined in light of the facts in each case, and the trial court is in the best position to view the needs of the parties in connection with an alimony award. *See Taylor, supra*. We hold that the trial court in this case applied the correct legal standard, found facts that were supported by the evidence presented, and did not abuse its discretion in awarding alimony to appellee.

## II. *Modification of Earlier Order Beyond the Expiration of Ninety Days*

■ As previously stated, alimony, a creature of statute, if awarded, must be awarded at the time of the divorce decree. Ark.Code Ann. § 9–12–312(a)(1). The latter order in this case (1) explained that the previously awarded alimony would begin from the date of the entry of the earlier award; (2) clarified that the Social Security Administration must withhold the payments from appellant's social-security disability payments; (3) and provided that the alimony payments shall continue until remarriage or appellate ruling.

Under Arkansas Rules of Civil Procedure 60(a) (2011), a trial court loses jurisdiction to modify an earlier order once ninety days pass:

> *Ninety–Day Limitation.* To correct errors or mistakes or to prevent the miscarriage of justice, the court may modify or vacate a judgment, order or decree on motion of the court or any party, with prior notice to all parties, within ninety days of its having been filed with the clerk.

*See also Tyer v. Tyer*, 56 Ark. App. 1, 937 S.W.2d 667 (1997). In *Holt v. Holt*, 70 Ark. App. 43, 14 S.W.3d 887 (2000), this court pronounced:

> In the absence of either changed circumstances or ambiguity, the changes made to the decree were not clarifications of what the court originally intended, but instead modifications that changed the effect that the decree would have had pursuant to its express terms and the law extant at the time it was pronounced.... (Rule 60(a) allows a court only to correct the record to make it conform to action actually taken at the time, and does not permit a decree to be modified to provide for action that the

154

court, in retrospect, should have taken, but which it in fact did not take.) 70 Ark. App. at 45, 14 S.W.3d at 888–89 (citations omitted).

In *Edwards v. Edwards,* 2009 Ark. 580, 357 S.W.3d 445, the supreme court observed that the trial court had jurisdiction to decide alimony at the time of the decree, pursuant to Ark.Code Ann. § 9–12–312(a)(1). As noted in *Grady, supra,* if a party desires alimony, that should be addressed at the time of the divorce.

Appellant contends that, pursuant to Rule 60, the trial court did not have jurisdiction to enter the second order on February 6, 2012, well past ninety days from the August 5, 2011 filing date of the divorce decree. But we note that Rule 60 is not applicable where the trial court merely corrects the record to more accurately reflect its original ruling. *Ford v. Ford,* 30 Ark. App. 147, 783 S.W.2d 879 (1990). The trial court's February 2012 order contained two rulings. The first ruling provided that the alimony awarded was effective when the divorce decree was entered, rather than the date of oral pronouncement. The order merely recites the applicable law and does not violate Rule 60. Arkansas Rule of Civil Procedure 58 (2011) provides that a judgment is effective the date it is entered. Under Arkansas Supreme Court Administrative Order No. 2(b)(2) (2011), a judgment is entered when filed by the clerk. Accordingly, we hold that the portion of the February 6, 2012 order regarding the effective date of the alimony award in the divorce decree was merely a clarification and recitation of the law and was not improper under Rule 60.

The second portion of the February 2012 order addressed the withholding of alimony from appellant's social-security disability payments. This ruling merely corrected an oversight in the original divorce decree. *See Linn v. Miller,* 99 Ark. App. 407, 261 S.W.3d 471 (2007). The trial

court "retains the power to clarify or interpret a prior decree for more than ninety days in order to more accurately reflect the court's original intention." *Id.* at 413, 261 S.W.3d at 475. The February 2012 order specifically states that its purpose is to resolve "uncertainty" in the court's August 2011 order. Accordingly, Rule 60 did not preclude the court from entering the February 2012 order.

Affirmed.

HART and MARTIN, JJ., agree.