Cite as 2015 Ark. App. 499

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.**  CV–14–525

| | |
|---|---|
| GAYLE D. ZIMMERMAN<br>APPELLANT | **Opinion Delivered** September 23, 2015 |
| V. | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. DR–2013-53-2] |
| SAMUEL B. POPE<br>APPELLEE | HONORABLE ROBERT V. GARRETT, SPECIAL JUDGE |
| | MOTION TO SUPPLEMENT THE RECORD DENIED; AFFIRMED IN PART;<br>REVERSED AND REMANDED IN PART |

**BART F. VIRDEN, Judge**

Gayle Zimmerman appeals from the amended divorce decree entered in the Ashley County Circuit Court on March 10, 2014, that modified a prior divorce decree entered on February 28, 2013. In this amended decree, the circuit court denied Zimmerman's request for alimony and awarded her ex-husband, Samuel Pope, one-half of the money she had withdrawn from her nonvested Arkansas Public Employees Retirement System (APERS) account. Zimmerman also appeals from the circuit court's denial of attorney's fees and her motion for an order of protection; and she requests that this court allow her to supplement the record to aid in addressing this point on appeal.

We deny the motion to supplement the record. We affirm the circuit court's denial of alimony and attorney's fees. We reverse the circuit court's decision to award one-half of

the funds withdrawn from the nonvested retirement account to Pope, and we remand the issue for the circuit court to enter an order consistent with this opinion.

## I. *Facts*

Gayle Zimmerman and Samuel Pope separated in September 2011 after thirty-two years of marriage. Pope filed a petition for divorce on January 25, 2012. On April 5, 2012, Pope, Zimmerman, and Zimmerman's live-in companion, Bill Murray (hereinafter referred to as "Murray"), were involved in a verbal and physical altercation at Wal-Mart in Crossett, and on April 27, 2012, Zimmerman filed a petition for an order of protection stemming from this event. On September 10, 2012, the circuit court held a hearing on this matter, and after hearing testimony, the circuit court orally dismissed Zimmerman's petition from the bench, stating that Pope had not exhibited threatening behavior in the past six months, so there was no fear of imminent harm. No written order was entered.

On December 12, 2012, the circuit court held a hearing where it addressed the property-settlement agreement reached by the parties. The settlement agreement allotting property and debt to each party was incorporated into the divorce decree, and the decree was entered February 28, 2013. The content of the settlement agreement that relates to this appeal concerns Zimmerman's APERS account and the issue of alimony. According to the agreement, Pope would receive one-half of Zimmerman's APERS account if it vested but, "if the interest of defendant does not vest, then plaintiff is entitled to zero." The court set temporary alimony at one dollar per month "with the issue of permanent alimony reserved for a subsequent hearing and proof. The Court retains jurisdiction over this issue." The circuit

2

SLIP OPINION

court also found that Pope was entitled to a divorce from Zimmerman.

On August 15, 2013, an amendment to Arkansas Code Annotated section 9-12-312 became effective and set forth "Unless *otherwise ordered by the court or agreed to by the parties*, the liability for alimony shall automatically cease upon . . . living full time with another person in an intimate, cohabitating relationship[.]" Ark. Code Ann. § 9-12-312(a)(2)(D)(Supp. 2013) (emphasis added).

Despite the divorce decree being entered on February 28, 2013, on January 8, 2014, the circuit court held another hearing on the outstanding issues of property and alimony. Each party testified to his and her current and past income level, the extent of emotional and career support they had received from each other during the marriage, and the family roles and responsibilities they had assumed during their marriage. Both parties filed affidavits of financial means, tax returns and forms, and pay stubs. Zimmerman specifically testified that she had campaigned day and night for her husband during his elections, that she was the primary caretaker of the children when they were young and that she had furthered his career at the expense of her own professional advancement. Zimmerman testified that she is a licensed attorney but does not earn enough in private practice to justify keeping an office open, so she closed her practice and in 2009 began working for the Arkansas Child Support Enforcement Unit, earning around $52,000 per year and which was the source of the contested APERS account. At the time of the hearing, she testified that she had no income, that her health insurance had lapsed, and that she needed extensive dental work. Zimmerman testified that when she was fired from her job with the Arkansas Child Support Enforcement Unit, and she

3

believed that because the account had not vested, the funds belonged solely to her. The APERS account held approximately $7300. Zimmerman also testified that she and Murray were living together in a romantic relationship and that, though Murray received income from his business and retirement from the military, he did not contribute to the household expenses. Zimmerman testified that she was actively searching for employment and was receiving unemployment benefits. She testified that she was having difficulty making her house payment, homeowner's insurance payment, and car insurance payment. Zimmerman asked that she be awarded alimony of no less than one-half of Pope's net income and for the award to last no less than thirty-three years.

Pope testified that he had received help from Zimmerman during his elections but that she had not campaigned tirelessly. He also testified he believed Zimmerman made about $1500 every two weeks working for Murray and that she had withdrawn the balance of her nonvested APERS account when she was fired. He testified about his own income and expenses as well. He testified that he paid for his son's dental-school expenses and that he supported his children financially while they pursued postgraduate degrees. Pope testified that he received a salary from his position as a circuit judge, income from a trust set up by his parents, and income from a rent house he owned. He admitted that he owed around $26,000 to Zimmerman according to the divorce decree and that he had not made all of the payments. He also submitted exhibits to the court showing that Zimmerman had a successful law practice in recent years.

In its January 31, 2014 order the court directed the parties to submit letters concerning



the issues surrounding Zimmerman's nonvested APERS account funds. The court also stated

that a letter would be forthcoming upon the issue of alimony.

In a letter dated February 10, 2014, the circuit court denied alimony to Zimmerman:

> I have reviewed my notes and some of the exhibits from the January 8, 2014 hearing in the above referenced case. . . .
> Ms. Zimmerman admitted that she is living with a man in an intimate, cohabitating relationship. Under A.C.A § 9-12-312 (a)(2)(D) she is not entitled to alimony. This was my third hearing in this case. It has been established that Ms. Zimmerman has had a sexual relationship with this man since the parties separated more than two-and-a-half years ago, although the exact date that Ms. Zimmerman started living with this man was not established, it is clear that this is a long-term relationship. The only difference between this couple and a married couple is a marriage ceremony. Therefore the Court feels that alimony would not be appropriate in this case whether this statute existed or not.

The circuit court also denied Zimmerman's January 13, 2014 motion for declaratory

judgment in which she requested that the circuit court find section 9-12-312(a)(2)(D)

unconstitutional.

In its letter, the circuit court also addressed the APERS account funds disbursed when

Zimmerman's employment was terminated. The circuit court found that because the funds

paid into the account were marital, the nonvested account was marital property, which should

be divided equally. The amended decree of divorce reflecting this change and the circuit

court's decision concerning alimony were entered March 10, 2014. This appeal followed.

II. *Issues*

A. Order of Protection

First we address the issue of Zimmerman's request for an order of protection, which

SLIP OPINION

the circuit court denied.[1] The circuit court ruled orally from the bench, and no written order was filed of record. Arkansas Rule of Appellate Procedure–Civil 2(a)(1) sets forth that an appeal may be taken from a final judgment or decree entered by the circuit court. Without an order addressing Zimmerman's request for an order of protection, this court cannot reach this issue.

### B. Alimony

Zimmerman asserts several challenges to the court's denial of her request for alimony. She challenges the constitutionality of the statute, and she also asserts that the circuit court abused its discretion in refusing alimony. Zimmerman also argues that the award of alimony should have been decided under the previous statute, which was in effect when she and Pope separated in September 2011 and at the time the original divorce decree was entered in February 2013.

### 1. The constitutionality of Arkansas Code Annotated section 9-12-312(a)(2)(D)

We first address the constitutionality of the amended statute. Zimmerman appeals from the circuit court's denial of her motion for declaratory judgment in which she requested that the circuit court declare section 9–12–312(a)(2)(D) unconstitutional. She argues that Arkansas Code Annotated section 9–12–312(a)(2)(D)  is unconstitutional for three reasons. First, she asserts that the statute dictates that the award of alimony is automatically terminated upon the recipient's intimate cohabitation with another person, which violates the Due Process Clause. Second, she argues that the statute disproportionately affects more women than men and

---

[1]On February 25, 2015, Zimmerman filed a motion to supplement the record with exhibits from the September 10 and December 12, 2012 hearings. We deny the motion.

therefore violates the Equal Protection Clause. Third, Zimmerman argues that the circuit court's consideration of cohabitation violates the right to privacy. We reject Zimmerman's constitutional arguments, and we affirm.

### a. Due process

Zimmerman argues that the statute automatically, and therefore without the necessary due process, terminates the award of alimony when a party begins intimate cohabitation. In *Summerville v. Thrower*, 369 Ark. 231, 235–36, 253 S.W.3d 415, 418 (2007), our supreme court stated our standard for reviewing the constitutionality of a statute:

> It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality; every act carries a strong presumption of constitutionality, and before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. Any doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality. The heavy burden of demonstrating the unconstitutionality is upon the one attacking it.

(Internal citations omitted.) If possible, this court will construe a statute so that it is constitutional. *See McLane S., Inc. v. Davis*, 366 Ark. 164, 233 S.W.3d 674 (2006). This court reviews the circuit court's interpretation of the constitution de novo, and though this court is not bound by the circuit court's decision, the circuit court's interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *See First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005).

First, we must address the meaning of the statute itself because Zimmerman relies on statutory interpretation in furtherance of her constitutional argument concerning due process. In determining the constitutionality of the statutes, we look to the rules of statutory construction. *Rose v. Ark. State Plant Bd.*, 363 Ark. 281, 289, 213 S.W.3d 607, 614 (2005).

SLIP OPINION

The basic rule of statutory construction is to give effect to the intent of the legislature. *Ward v. Doss*, 361 Ark. 153, 159, 205 S.W.3d 767, 770 (2005). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id*. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. *Id*.

Arkansas Code Annotated section 9-12-312(a)(2)(D) as amended, sets forth: "*Unless otherwise ordered by the court or agreed to by the parties*, the liability for alimony shall automatically cease upon the . . . living full time with another person in an intimate, cohabitating relationship[.]" (Emphasis added.) According to the plain language of the statute, the court still has discretion to award alimony even if a party is involved in an intimate cohabitation, and the parties are allowed to form an agreement concerning alimony under those circumstances as well. In short, the statute neither disallows the judge's use of discretion, nor does it bar the parties from entering an agreement concerning alimony even if the party requesting or receiving alimony enters into an intimate, cohabitating relationship. Because Zimmerman's assertion that the statute violates the Due Process Clause depends on her mischaracterization of the plain language of the statute, we reject her argument. As set forth above, the party attacking the statute bears the burden of making a clear argument demonstrating unconstitutionality. Zimmerman's argument is based upon an incorrect

SLIP OPINION

interpretation of the plain language of the statute; therefore, she has not clearly shown how the statute is unconstitutional, and we reject her claim that the statute violates the Due Process Clause.

### b. Equal protection

We now turn to Zimmerman's argument that the statute violates the Equal Protection Clause because, even though it is written in a way that applies to either spouse regardless of his or her sex, the cohabitation clause disproportionately affects women more than men. In order to prove that section 9-12-312(a)(2)(D) violates the Equal Protection Clause, Zimmerman must demonstrate there is no rational basis for the challenged clause, i.e., the court's ability to terminate or deny alimony based upon cohabitation with a new partner.

Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Whorton v. Dixon*, 363 Ark. 330, 336, 214 S.W.3d 225, 230 (2005). This presumption places the burden of proof on the party challenging the legislation to prove its unconstitutionality. *Id.*

Our supreme court set forth the rational-basis test for determining whether a statute violates the Equal Protection Clause:

> The Equal Protection Clause permits classifications that have a rational basis and are reasonably related to a legitimate government purpose. Equal protection does not require that persons be dealt with identically; it only requires that classification rest on real and not feigned differences, that the distinctions have some relevance to the purpose for which the classification is made, and that their treatment be not so disparate as to be arbitrary. When reviewing an equal-protection challenge, it is not

SLIP OPINION

this court's role to discover the actual basis for the legislation. Rather, we consider whether there is any rational basis that demonstrates the possibility of a deliberate nexus with state objectives so that legislation is not the product of arbitrary and capricious government purposes. If a rational basis exists, the statute . . . will withstand constitutional challenge. Under the rational-basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation.

*Rose*, 363 Ark. At 617–18, 213 S.W.3d at 293 (internal citations omitted).

The courts have long held that the public-policy purpose of the award of alimony is to rectify economic imbalance in the earning power and the standard of living of the parties to a divorce in light of the particular facts of each case. *Evtimov v. Milanova*, 2009 Ark. App. 208, at 6, 300 S.W.3d 110, 115. In the touchstone case on the matter of spousal support, *Wear v. Boydstone*, 230 Ark. 580, 584, 324 S.W.2d 337, 339 (1959), our supreme court held, "[W]e see no logic in requiring a first husband to contribute at regular intervals to an ex-wife whose care and maintenance has been assumed by a second husband." Though the assumption that spousal support is solely within the purview of husbands in the event of divorce is antiquated, the meaning of the holding is still true today: the need for alimony may cease when the support and care of the ex-spouse is taken over by another person, and remarriage or cohabitation may be considered by the court in determining whether alimony is necessary. *See Herman v. Herman*, 335 Ark. 36, 40, 977 S.W.2d 209, 211 (1998) (where our supreme court held that there was no need to modify an award of alimony because the trial court had not found that the man with whom Ms. Herman was cohabitating had not assumed responsibility for Ms. Herman's care and maintenance, and

SLIP OPINION

found only that they had been living together in a sexual relationship). In short, the reasonable governmental purpose of the statute is to help settle the economic imbalance between the parties by assessing whether the facts of a case show a need for alimony. For this reason, we hold that there is a rational basis to support the Arkansas Code Annotated section 9-12-312(a)(2)(D), and the statute does not violate the Equal Protection Clause.

### c. Right to privacy

Zimmerman has also failed to demonstrate that because the statute allows the court to consider cohabitation of the parties it violates the right to privacy. Our supreme court has held that there is a right to privacy guaranteed by the Arkansas Constitution: "[W]e hold that the fundamental right to privacy implicit in our law protects all private, consensual, noncommercial acts of sexual intimacy between adults." *Jegley v. Picado*, 349 Ark. 600, 632, 80 S.W.3d 332, 350 (2002). As the right to privacy is a fundamental right, we must analyze the constitutionality of a statute under strict-scrutiny review. *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002). When a statute infringes upon a fundamental right, it cannot survive unless a compelling state interest is advanced by the statute, and the statute is the least restrictive method available to carry out the state interest. *Thompson v. Ark. Soc. Servs.*, 282 Ark. 369, 374, 669 S.W.2d 878, 880 (1984).

The compelling state interest advanced by Arkansas Code Annotated section 9-12-312(a)(2)(D) is the court's need to determine if the case before it presents a situation where financial support through alimony is necessary, as discussed above in the portion of this

SLIP OPINION

opinion setting forth the public-policy purpose of alimony.

The second prong of the strict-scrutiny test is whether the statute sets forth the least restrictive method available to carry out the state interest. *Thompson*, *supra*. This court has held that an alimony award must always depend on the facts of the case. *Killough v. Killough*, 72 Ark. App. 62, 66, 32 S.W.3d 57, 59 (2000). We have also recognized that a circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Webb v. Webb*, 2014 Ark. App. 697, at 3, 450 S.W.3d 265, 269 (2014). The primary factors in determining the award of alimony are the financial need of one spouse and the other spouse's ability to pay. *Id*. Secondary factors the court may consider are "the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage." *Id*. at 3–4, 450 S.W.3d at 269.

In divorce cases where spousal support is requested, delving into the private lives of the parties is the least restrictive method, and indeed the only method, the court has to determine the circumstances of the parties, to evaluate the facts of the case at hand for the presence of the factors listed above, and ultimately to determine whether financial need exists. Therefore, the compelling state interest is achieved by the least restrictive means possible, and the statute withstands strict-scrutiny analysis. We reject Zimmerman's

SLIP OPINION

argument that the statute violates the constitutional right to privacy. The circuit court based its decision on a constitutionally sound statute; therefore, we affirm.

### d. The previous statute v. the amended statute

We now turn to Zimmerman's argument that the circuit court should have applied the previous statute that allows the court to consider remarriage of the party, rather than the amended statute that allows the court to consider Zimmerman's cohabitation with Murray. Zimmerman neither develops any legal argument nor cites any authority supporting her assertion that the previous statute should apply. We have consistently held that we will not consider an argument on appeal that has no citation to authority or convincing legal argument, nor will we research or develop an argument for appellant. *Cooper v. Cooper*, 2013 Ark. App. 748, at 9, 431 S.W.3d 349, 355. It is impossible for our court to conduct a meaningful review in a case where the appellant offers no authority or convincing argument to support allegations of error. *City of Greenbrier v. Roberts*, 354 Ark. 591, 594, 127 S.W.3d 454, 456 (2003). Therefore, we decline to address the issue here.

### e. Abuse of discretion

Finally, concerning the issue of alimony, Zimmerman argues that the circuit court abused its discretion because it did not properly consider all of the evidence presented at the January 8, 2014 hearing and decided the issue solely on cohabitation. Zimmerman's argument is not supported by the facts; therefore, we affirm.

The circuit court found that it would not have awarded alimony under either the

SLIP OPINION

previous version of Ark. Code Ann. § 9–12–312(a)(2)(D), which allowed the court to terminate alimony upon remarriage of one of the parties, or the current version of the statute, which extends the court's ability to consider modern living arrangements. The circuit court found that, in making its decision, it reviewed its notes from the hearing and the exhibits submitted concerning the issue of alimony, indicating that it took into account more than just living arrangements. The testimony from both Zimmerman and Pope went far beyond the one issue of cohabitation and indeed, concerned both parties' current and past incomes, earning capacities, age, health, and expenses. In fact, the exhibits were strictly related to the financial situations of both parties and did not concern cohabitation at all.

The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). A circuit court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Stuart v. Stuart*, 2012 Ark. App. 458, at 3, 422 S.W.3d 147, 150. Alimony is not available under the common law, but is a creature of statute, and a discretionary one at that. *See Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). The appropriateness of an alimony award is determined in light of the facts in each case, and the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Stuart*, 2012 Ark. App. 458, at 9, 422 S.W.3d at 153.

A careful review of the testimony of the parties and the exhibits each party

submitted to the court shows that there was ample evidence presented and considered by the circuit court in making its determination. We cannot say the court acted improvidently, thoughtlessly, or without due consideration. We find no error, and we affirm the denial of alimony.

## C. Attorney's Fees

We also reject Zimmerman's argument regarding attorney's fees and costs. She failed to seek them at the trial court level and is barred from requesting them now. Arkansas Rule of Civil Procedure 54(e)(2) sets forth, "Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than fourteen days after entry of judgment[.]"  There is nothing in the record or addendum showing that Zimmerman orally or in writing requested attorney's fees within fourteen days of the entry of judgment; therefore, we deny her request.

## D. Retirement Account

Zimmerman asserts that the circuit court was barred from amending the original agreement incorporated into the decree. Pope argues that the circuit court created an equitable remedy by modifying the original decree and awarding half of the nonvested APERS account to him. On this point we reverse and remand with directions to the circuit court to reinstate the original order concerning Zimmerman's APERS account.

In *Helms v. Helms*, 317 Ark. 143, 145, 875 S.W.2d 849, 851 (1994), our supreme court held,

In the absence of fraudulent inducement in executing an integrated property settlement agreement, a divorce decree may not be judicially modified. This agreement was incorporated into the decree and approved by the chancellor. The fact that appellant entered into an agreement which later appeared improvident to him is no ground for relief, and it may not now be modified.

The original decree entered February 28, 2013, which incorporated the settlement agreement between the parties, stated that the APERS account was to be divided *if* Zimmerman vested. According to the agreement, if the account did not vest, Pope was "entitled to zero." In February 2013, Zimmerman was fired shortly before she vested. In a letter dated February 10, 2014, the circuit court explained why it changed its order:

Ms. Zimmerman contributed money to an APERS account during the marriage. After the divorce was granted in 2013, she withdrew that money. That money is marital property and Judge Pope is entitled to 50% of that money. The money she contributed to that account was marital, therefore the money she withdrew is marital.

The circuit court modified the specific contractual terms of the agreement that were incorporated into the divorce decree, which, in the absence of fraud, it was not authorized to do. As in the *Helms* case, the agreement was binding on this issue. We reverse on this point, and we remand for the circuit court to reinstate the original settlement agreement it approved and that was integrated into the divorce decree.

### III. *Conclusion*

We deny the motion to supplement the record; we affirm the denial of the award of alimony and attorney's fees; we reverse the award of half of the nonvested APERS account funds to Pope; and we remand for the circuit court to reinstate the original

SLIP OPINION

agreement incorporated into the decree on this issue.

Motion to supplement the record denied; affirmed in part; reversed and remanded in part.

GLADWIN, C.J., and HIXSON, J., agree.

*Gayle D. Zimmerman*, pro se appellant.

*Byrd Law Firm "P.A."* by: *John Richard Byrd, Sr.*, for appellee.